Mr Justice JohnsqN
 

 delivered the opinion of the Court.
 

 This case turns altogether upon doctrines peculiar to the states of Virginia and Kentucky. It is thb ease of a suit in equity, instituted by the indorsee, or, in the language of the country, the assignee, of a promissory note, to charge an intermediate'indorger. All the doctrine on the subject will be found fully stated in the two cases. of. Riddle' & Co.
 
 vs.
 
 Mándeville. <fc Jameison, reported among the decisions of this Court; and in the cases of Smallwood
 
 vs.
 
 Woods, and Spratt us. M’Kinney, to be found among the decisions of the court of appeals of Kentucky.
 

 The defendant here has demurred to the bill, for. want of equity, and this raises the first question in the cause.
 

 In the last case decided in this Court, between Riddle &. Co. cs. Mandeville & Jameison, which was a case in most respects similar to the present, this Court decided5 that a suit could be maintained
 
 in equity
 
 by the holder-pf an indorsed, note against a rémote indorser; and.upon grounds perfectly familiar to courts exercising:equity jurisdiction. It was a Virginia contract, governed by the same Jaw which is of force in Kentucky. This. Cojurt.had before,decided, that by . the laws of the country, governing thé contract, a suit at-law could not'be maintained between the holder of the note and a remote indorser. But’then a suit at law could have been maintained by him against the immediate indorser, and by him against the preceding indorser, and so on through any number of indorsers. This presented the ordinary case of an assignment of a chose in action, which transfers an interest without the right of action.
 

 To maintain this demurrer then, it was incumbent on the defendant to have shown, that there, was some principle in the jurisprudence of Kentucky, that could sustain a distinc
 
 *348
 
 t ion'between his case and that previously decided here : twit every thing concurs to repel the idea of stich a distinction. In the case "of Drake
 
 vs.
 
 Johnson, the court of appeals of Kentucky also decided; that a suit .at law could riot be maintained in that state by. the indorsee against a remote indorser.
 

 The conclusion then results from our own. decisions that he must be let into equity;, for an indorsement is certainly no release to the previous indorsers; and tbd| ultimate asr signee alone is entitled to the benefit of their liability* And. this we understand to be consistent witn the received opinions and practice of Kentucky.
 

 The secondpoint made for the defendant is,, that, as.,he received no consideration for assigning the note,-he is not liable at all.
 

 But on this it is only necessary to observe, that he indorsed it to,give credit;to Voorhées, the promissor ; and the law therefore imputes to.him the consideration paiíUo VQorhsés.*
 

 The most raaterial point in the' cause, and that on which* the decision below was rendered in favour of the defendant; was the want of due diligence against the drawer of the note. The law is settled there, as it is in Virginia, and in this Court, upon Virginia contracts of this description; that every reasonable effort must be made to recover of the drawer by suit, before the assignee can have recourse against the assignor or indorser. . It is on the question, what con-stitutés such diligence, that alj the difficulties arise on suits upon these contracts. And certainly this Court cannot be called upon to carry the obligations imposed upon assignees on this point, further than, the state courts have already extended them.
 

 There are-three grounds on which the defendant , would impute to the complainant a want of diligence, fatal to- his right to recover.
 

 The first is, that the fi. fa. did not come to the marshal’s hands, until the expiration of about, thirty-six days after the judgmént was obtained, and hineteen-after it issued.
 

 The. second, that the ca. sa. did not issue until about-iibrfee months'and a half after the fi. fa. .
 

 Let it be observed, that the note fell, due on the 25th of
 
 *349
 
 September, the writ was issued otl the 2d of October ; the judgment was entered the November term following; and the drawer, Yoorhees, béing held in custody for want of bail, was discharged, as insolvent, on the 14 th of December of the same year-
 

 Justice can hardly be charged with a halting gait thus far. As to her subsequent progress, it does not appéaron what day the court for November term adjourned ; but as the fi. fa. bears /date on the 29th of December, it is presumable that it.sat on that day. The fi. fa.;did not reach the office of the marshal, until three weeks after ; and the oa. sá. was not sued out at the time whén the fi. fa. issued. But it was sued out atthe term to which the fi. fa. was returnable, to wit, on the 1,1th of April 1822. So that from the time the note fell due, to the last step in the progress of judicial means for enforcing payment, we count but six months and a. half. Wp do not recognise the supposed obligation or power of the. party, in the circuit'court, to sue out the Ga. sa. contemporaneously with the fi. fa.; and with the exception of that interval, we are rather inclined to attribute to the complainant extraordinary diligence, than culpable delay.
 

 But, why were the executions issued at all in this case, except from abundant caution, and to avoid the imputation of laches *? Was it necessary
 
 %
 
 The courts' of Kentucjtry have certainly decided-otherwise. In the case of Stapp et al.
 
 vs.
 
 Anderson et al. 1
 
 Marsh.
 
 240, they express themselves thus:
 

 “The discharge of an insolvent under our sta .uteIs a judicial act, of ¿ record character, and is in its nature, as it must be in contemplation of law; the most satisfactory evidence of the insolvency of the person discharged.”
 

 This, it is true, was declared respecting a discharge in another suit, on a different cause of action, under the insolvent •law of the state, arid upon a ca. sa. But it would be difficult to assign a reason, why it should not apply to a discharge in a suit op the samé cause of action, under the law of the United States,.and where the. defendant was in custody under an order for bail. In both instances, a state of insolvency is judicially established ; and as the court expresses itself in
 
 *350
 
 the same case, “ it would have, been worse than idle,” nay, in this case it would have, been false imprisonment, to have re-taken the debtorif, .as the defendant contends, and no doubt was the'fact, he was discharged under the suit upon this. note.
 

 The third and last ground of laches, arid, that which it appears,\bya report handed fo us, influenced the court below, Was the consent of the agent of the complainant to dispense with the imprisonment to which the drawer of the note might have been subjected, before he would have taken the oath, and. received a discharge under, the act of congress.
 

 . The correctness of the decision below upon this point must be tested, by considerations drawn from the object of the . imprisonment; the influence, of the discharge upon the loss of the debt; and from adjudged cases. We are inclined to think, that it has been.rather too hastily conceded, that no case similar to the present has been adjudicated.. That it adds another to the long list of instanced'of laches which have been held, to be fatal to the recovery of the assignee against his assignor in that country, cannot be doubted.
 

 .'This case, it must be recollected,. comes within-the fifth section; of the'act ofJanuary-6th, 1800, entitled “-Am act for the relief of persons imprisoned for debt.5’ The second, third arid fourth sections of that act make, provision for the ’discharge of persons confined under execution, and. the fifth section extends “ the privileges and relief” of that act; to persons in confinement, against whom judgment is obtained but no execution issued. Under the provisions in favour of persons charged in execution, on the day of arrest, a notice may be served upon the person at whose suit they are confined, and at the end of thirty days they may be. discharged. By the fifth sectiori it. is enacted, “ that any person imprisoned upon process issuing from any court of the' United States, except at the suit of the United States, in-any civil action, against whom judgment has been or shall be recovered, shall be entitled to the privileges and íélief provided by this act, after the expiration of thirty days from the time such judgment has been or shall be recovered, though the
 
 *351
 
 creditor should not, within that time* sue out . his execution and. charge the debtor therewith.”’
 

 It has . been argued, that under this section the defendant must remain in prison thirty days after judgment before he can sue'out his noticé to the plainiiff, thus requiring-him to remain sixty days in confinement! in the cases which come under this section•; whereas, he remains but .thirty days, when confined under execution.
 

 There can be no reason for the distinction, and we think that, in favour Jof liberty and with a .view.to consistency, the the construction should be otherwise; If such were the true construction, -the .relief would not be the same as is extended tp the debtors- of the. other class. We think there-. . fore,, that? the day of entering judgment under the fifth seer tion, is the day that corresponds to the day of arrest-under the previous provisions of the law; and, therefore, that in thirty, days after judgment, he may -be discharged by complying with, the other requisitions of the law.; The day-of éntering thé judgment appears no where in this:record, .but ¿s the.notice was served on-the plaintiffs- agent on the 14th. -of December, we miist presume that the-judgmént had then been entered ;, and on the. same day the agent signed .that consent to dispense with' “ the previous imprisonment by, law to entitle the defendant to. take the, path.of an insolvent debtor,” by which! it is now insisted,, that the complainants are barred of their,right to recover of the'assignor.
 

 The error -of the court below obviously consists in this, that) it considers the imprisonment to which the defendant is subjected, as among the means of coercing payment... The. arrest certainly is'"so;, but the. thirty days confinement that ensues, is only incidental to the notice required to be given to the plainiiff of the defendants’ intention to claim his discharge asan insolvent. : Now. he must be insolvent when this, notice is given, and what is to be forced from an insolvent man by the thirty days, imprisonment It, is obvious that the confinement is not regarded as the means of coercion, but only as a. time necessary to the. investigation of the defendants’ circumstances, or the collection pf evidence
 
 *352
 
 to repel his insolvency. The coercive means of the law are to be found in the searching oath to be administered, and in the fear of prosecution, for perjury, and recommitment in the same actions.
 

 If, then,, this imprisonment has no other object than to make the debtor, await the investigations of his creditor,. it is difficult to assign.a reason why the creditor may not dispense with it, when satisfied that the application is an.. honest one, and that delay would discover nothing that he
 
 was
 
 not already acquainted with. In the language of the Kentucky coúrtj' it would . be “ worse than idle*” to detain him. Nothing but unavailing hardship upon him, and ulti-, mate expense to his indorser, cóuld result from it.
 

 Nor d° WC think ourselves unsupported by thfe Kentucky decision in this view of, the subject.
 

 In . the case of Young
 
 vs.
 
 Gosby, the drawer, of the note being in custody under a cá; sa. iss;ued'hy the assignee,-was discharged for want of security for the payment of prison fees,. This discharge, it was contended, was imputable to the- assignee and barred his recovery against the assignor; unless he could prove that the drawér had nothing which might have been wrung from him by a protracted imprisonment. But the court of appeals decided otherwise; and established, that if the assignor had sustained, any injury in thát respect, it was incumbent upon him to .prove it. The' language of chief justice Boyle, oh that occasion, was this. “ It has repeatedly been decided in this court, that to entitle the assignee of a bond or note to recover of the assignor, it was necessary to show that he had used due ‘diligence by suit, to recover the amount from the payor or obligor; but it has never been required of him to prosecute the suit against the .payor or obligor, farther thau a man of ordinary prudence .and diligence would do, in a case where he was solely and exclusively interested. To máke it necessary to do so, would be unreasonable and.unjust; inasmuch. as.it would tend, to accumulate costs. without the - prospect of any probable advantage to either of the parties.”
 

 Ws entirely approve of the opinions here expressed: they
 
 *353
 
 aré concéived' in the reason and benignity of the law, and we are unwilling to extend the diligence required of the assignee beyond the limits there laid down.
 

 In the case of Oldham
 
 vs.
 
 Bengan, the doctrine laid down in Young
 
 vs.
 
 Cosby is considered and' affirmed-, and chief justice Bibb observes “that although due diligence has always been required in such cases, yet in no casé has all possible diligence been exacted.”
 

 And both these cases concur to establish this principle, that it is not on the ground of a mere possible injury that the assignor can claim his discharge ) much less where it is
 
 improbable,
 
 as judge Rowan remarks in the case of Stapp
 
 vs.
 
 Anderspn, before cited. The present case presents the drawer in a situation in which it is not only improbable, but scarcely possible, that the assignor could have sustained tin injury. For a discharge under the insolvent layv of the: United States, is confined in its. effects altogether to the particular case; and even as to . that, does not exempt the debtor’s present effects, or future acquisitions, from the process of the law ; nor is his person exempt from confiner. ment for the same debt, should he be detected in a fraud, upon the creditor. The bare speculative idea, then, of a possible acquisition of property within the.thirty days, during which Voorhees might have been-compelled to await the will . or inquiries of his creditor, and of property not tangible by the process of the law; is too feeble a consideration to affect the rights of the complainant..
 

 The decree below will be reversed, and a decree entered here that the complainant recover his demand.