JAMES W. EMERY & others *vs.* WILLIAM P. PARROTT &
another.

If a resident of another state becomes insane pending a suit in equity against him in this
Commonwealth, the appointment by the court of his counsel to be his guardian *ad litem*
justifies proceeding without notice to a guardian previously appointed in the state of his
domicil.

In a suit in equity to compel the defendants to account for shares in the stock of a corpo-
ration, alleged to have been obtained by them in fraud of the plaintiffs, wherein it is de-
creed that one of them, while acting as agent of the plaintiffs, united with the other

who knew of that relation, as partners in obtaining the shares, to which the plaintiffs were in equity entitled, they are liable to account therefor both jointly and severally may be decreed to replace the shares to the plaintiffs, to the extent of other like shares held by them at the time of the filing of the bill; and if one of them dies after the said interlocutory decree, and while the case is referred to a master to state the account, and the other is fully heard before the master and afterwards before the court on exceptions to his report, the final decree for the plaintiffs should be entered *nunc pro tunc*, as of the date of that decree.

BILL IN EQUITY filed May 16, 1866, by James W. Emery, Estes Howe, Joseph H. Converse and Gardiner G. Hubbard, all described as of Boston in this Commonwealth, against William P. Parrott, also of Boston, and Stephen H. Head, of Maine, commorant in Boston, to compel the defendants to transfer to the plaintiffs certain shares in the capital stock of the Glace Bay Mining Company, a corporation chartered by the province of Nova Scotia, and to account to the plaintiffs for profits realized upon said shares in fraud of them, and reimburse to the plaintiffs their damages in consequence of the fraud, the allegations of the nature and circumstances of which were briefly as follows :

That in the spring of 1861 Edward P. Archbold, who owned a coal mine at Glace Bay near Sydney in Nova Scotia, communicated to the defendants, at Boston, his desire to sell the mine and form a company to buy and work it, and at or about the same time promised Head a commission of either fifteen or twenty per cent. of the capital stock, if he should organize such a company ; that Head communicated the promise to Parrott, and requested him to select some capitalists in Boston for the purpose, and aid in organizing a company, and agreed to share the commission with him equally for his services ; and that this agreement of Head with Parrott was communicated to Archbold before the plaintiffs entered into any contract in respect to the mine ;

That in August 1861 Parrott, who was known to some of the plaintiffs as an engineer of high repute, submitted to them a proposition to buy Archbold's mine, representing that the only question as to its great value depended on the practicability of opening a good harbor near it for the shipment of the coal, and offered to join with them in making the purchase, if it could be made advantageously, and to visit the mine with them ; and that

the plaintiffs expressed themselves willing to engage in the matter with him, if on examination the mine should appear as valuable as was represented, and a good harbor could be made, and the property could be bought for a fair price ;

That Parrott communicated these negotiations to Head, and a correspondence ensued between them and Archbold, in which Archbold wrote to Parrott that the terms on which he would be willing to have a company formed would be, that he should retain fifty per cent. of the whole stock, when the mine was properly equipped with every requisite for a large business, and should have the agency of the company in Nova Scotia, and wrote to Head to the same effect, and that out of this fifty per cent. " you and the parties promoting the scheme are to get fifteen per cent., leaving me thirty-five per cent. as my share ; "

That in September and October 1861 the plaintiffs and Parrott visited the mine, and Parrott made examinations and reported to them favorably as to opening the harbor, and Parrott and the plaintiff Howe were appointed a committee of the associates to confer with Archbold, and did confer with him, concerning a purchase of the mine by them, but without reaching any result ;

That later in October 1861 Archbold came again to Boston, and Parrott and Howe, who continued to act as a committee in behalf of the associates, continued the negotiations with him, which then resulted in a draft of a contract for the sale of the mine by Archbold and its purchase by the associates, most of the details of which were arranged by Parrott, who assured his associates that he did the best he could for them and obtained from Archbold his best terms ;

That, in order to ascertain what would be the cost of opening a harbor and providing apparatus to work the mine, the plaintiffs requested Parrott to make and furnish estimates thereof before entering into any contract with Archbold, and Parrott did so, estimating it at $56,000 ; but that the actual cost thereof subsequently proved to be more than $75,000 ;

That the written contract was signed and sealed, under date of November 1, 1861, by Archbold as party of the first part, and

the plaintiffs and Parrott as party of the second part, and provided, among other things, that the parties should apply to the general assembly of Nova Scotia for a charter as a mining corporation, that upon obtaining it the capital stock should be fixed at the sum of $150,000, half of which should be subscribed by the party of the first part, and half by the party of the second part, and that the corporation should buy the mine for $75,000, spend $70,000 in opening a harbor and providing apparatus for working the mine, and reserve the other $5000 for working capital ;

That the provisions of this contract were substantially carried out, and the corporation was chartered under the name of the Glace Bay Mining Company, and duly organized in September 1862, and the mine conveyed to it, and certificates of its stock to the amount of $75,000 were issued to Archbold ;

That, at or about the time when Archbold received the certificates, Parrott, in Head's presence, suggested that he should take them out in such a form that the amount of stock to be paid by him to the defendants under his agreement with Head could be apportioned equally, and made a calculation of the amount of stock due from him, and a memorandum of the proportion in which it should be divided, and gave him this memorandum, and thereupon he transferred 112 shares of his stock to Parrott, and 113 shares to Head, the same representing fifteen per cent. of the whole capital stock of $150,000 ;

That since that time various stock dividends had been declared by the corporation, whereby its capital stock had been enlarged to $600,000, and various cash dividends had also been declared, and the defendants received their proportions thereof ;

That in February 1865 Head sued Archbold in the circuit court of the United States for 75 more shares of the original stock, and the dividends thereon, alleging that his agreement with Archbold was for twenty and not fifteen per cent. of said stock ;

And that neither of the defendants ever disclosed to the plaintiffs the agreement between Archbold and Head, or their agreement with each other, and the first knowledge the plaintiffs ever had thereof was by Parrott's testimony as a witness in Head's suit against Archbold ;

And the bill charged that while Parrott was acting as agent of the plaintiffs, in his negotiation as committee man, in their behalf, with Archbold, in purchasing the property, and as their engineer in examining the mine and harbor, and making plans and estimates of the expense of opening the mine and harbor, he was at the same time acting as the agent of Archbold in selling the same property ; and that, while he was acting as the partner and agent of Head in organizing the company and selling the property, and participating with him in the commissions paid by Archbold for those services, he was at the same time acting as the agent and partner and joint associate of the plaintiffs in purchasing the property ; that Head well knew all the negotiations of Parrott with the plaintiffs, and that he had taken an equal interest with them in the enterprise and was their partner therein ; that Parrott, by executing the contract of November 1, 1861, together with the plaintiffs, became a partner with them therein ; that Parrott and Head became partners in Head's contract with Archbold ; that Parrott, while so a partner with Head in selling the property, became the agent and partner of the plaintiffs in purchasing it ; that these acts and doings were a fraud on the plaintiffs ; and that thereby said partnership of Parrott and Head became liable to account to the plaintiffs for four fifths of the stock received by them, and all dividends declared and paid to them thereon.

The defendants answered separately ; the plaintiffs filed a general replication ; and the case was reserved by *Wells*, J., for the determination of the full court, on the pleadings and a report of testimony taken under an agreement of the parties, and was argued in November 1868.

Before the reservation, upon the suggestion of the plaintiffs' counsel that Head had become insane pending the suit, and their motion that his counsel of record be appointed his guardian *ad litem*, Charles L. Woodbury, Esq., was so appointed on February 26, 1868. By an exhibit annexed to the report of the testimony, it appeared that, sixteen days before this appointment, Head was adjudged insane by the probate court of Kennebeck County in the state of Maine, and was described in the judg-

ment as of Augusta in that county, and a guardian residing at Augusta was appointed for him by that court.

After the reservation, and before the argument, Parrott died, and his executor appeared and took upon himself the defence of the suit.

*S. Bartlett & H. W. Muzzey*, for the plaintiffs.

*B. R. Curtis & C. L. Woodbury*, (*M. E. Ingalls* with them,) for the defendants.

BY THE COURT. The questions in this case chiefly relate to matters of fact; and in causes of this description the court ordinarily regard it as sufficient simply to state the conclusions at which they have arrived.

From a careful study of the voluminous testimony, we are satisfied that the defendant Parrott was engaged in a common enterprise with the plaintiffs, and likewise acted as an agent on behalf of all the associates to purchase the Glace Bay coal mine. While acting in this capacity he secretly stipulated for certain private advantages to himself, in the shape of commissions from the vendor of the mine. And he obtained these commissions while his associates had a right to expect that he would effect and was effecting the best bargain he could for them and himself jointly and on terms of equality. Benefits and advantages thus obtained the principles of equity will not allow him to retain for himself. He must account for them and share them with his associates, the plaintiffs.

The case of the defendant Head stands somewhat differently, but is governed by the same general principles. He did not stand in any fiduciary relation to the plaintiffs. But he knew the position of Parrott, and became the partner of Parrott, uniting with him to effect a sale of the property to Parrott and the plaintiffs, for the sake of dividing with Parrott the secret commission which the owner of the property had agreed to pay for effecting the sale. He was thus fully cognizant of the illegal conduct of Parrott, and coöperated with him in inducing the plaintiffs to make the purchase. He participated in the profits of the transaction; and the court are of opinion that he as well as Parrott must disgorge the secret gain which they thus jointly obtained and divided with each other.

The result is, that the plaintiffs are entitled to a decree that the shares of stock which Parrott and Head received as commis· sions must be shared by them with the plaintiffs, and all dividends which have accrued upon the shares must also be accounted for. We arrive at this conclusion without considering the evi· dence objected to by the defendants.

The case is to be referred to a master to state the account and report the form of a decree proper to be entered.

*Ordered accordingly.*

That order was made on November 24, 1869; and the master was appointed on January 22, 1870. At the first hearing before him, on September 8, 1870, it was admitted that Head had died at Baltimore in Maryland, on February 18, 1870, and the guardian *ad litem* appointed for him in 1868 stated that he had no authority to represent him or his personal representatives ; and no person appeared to represent him or his estate at any of the hearings before the master. Before further proceedings, after the suggestion of Head's death, Parrott's executor protested against any such proceedings, for the following reasons : .

"For that the record of the cause discloses that the defendant Head, at the time of service of process therein, was a citizen of the state of Maine, and also that he became insane before the testimony had been completely taken, that a guardian was appointed for him by the probate court of Kennebeck County in Maine, who was a citizen of Maine, and afterwards, without citing the said guardian, this court appointed a guardian *ad litem*, who was a citizen of Massachusetts, on the motion of the plaintiffs, and proceeded to hear the cause ; and that now the record of proceedings before the master discloses that Head died insane at Baltimore in Maryland, before any proceedings under this order of reference were had by the master, and after the order of reference was made ; and this defendant executor excepts, for that, the Constitution of the United States having declared that the judicial power of the United States shall extend to controversies between citizens of different states, and the statutes of the United States having extended the jurisdiction of the courts of the United States to

Emery *v.* Parrott.

include at the option of the citizen of another state all such controversies, in manner as in said statutes described, this court had no authority to appoint for the insane defendant Head a guardian *ad litem* who was a citizen of this state, and that Head was not lawfully represented at said hearing before the court, and that the said decree and opinion of the court were improvidently made and had, and are void for want of jurisdiction over said Head."

" On the facts as above set out, the said defendant executor further excepts, that there is now no representative of Head a party in this cause, and that the master cannot lawfully under the said order of reference, made before the death of Head, take any account in or do any of the acts referred to him, and should so report for the further order of the court in the premises."

The plaintiffs contended that the hearing should proceed notwithstanding this protest; and the master so ruled, and proceeded with the hearing, and found that the number of shares received by Head and Parrott from Archbold were respectively, as alleged in the bill, 113 shares and 112 shares, and that they received them in September 1862; that " at the beginning of this suit Head held and owned 290 shares, the whole of which were either the original commission shares received by him as aforesaid, or shares accruing as dividends or by way of profits or rights" thereon; that " at the beginning of this suit, and at the time of his death, Parrott held and owned 678 shares, of which 480 shares were received from other sources than as aforesaid; " and that, both at the beginning of this suit, and on November 24, 1869, the date of the interlocutory order therein, Parrott and Head were jointly and severally liable to the plaintiffs for four fifths of 900 shares of the stock, that is to say, for 720 shares, " being four fifths of the whole amount of said commission shares with the accruing dividends and profits as received in stock." He also found what additional amounts in money the defendants were liable for, on account of cash dividends received upon the 720 shares, at the beginning of the suit and on November 24, 1869, respectively.

After stating these proceedings and findings, the master reported " that, on account of the death of the defendant Head, and the present condition of his estate with reference to this suit, the master has thought it proper to await the further order of the court before presenting the draft of a final decree ; " and he annexed to the report exceptions alleged thereto by Parrott's executor, part of which related to questions of fact, and the points of those relating to questions of law were substantially as follows :

*First.* That all the proceedings after the suggestion of Head's insanity were void for want of jurisdiction over him.

*Second.* That Head and Parrott are not liable jointly, but severally, if at all.

*Third.* That if any final decree for the plaintiffs can be made, it can only compel the specific transfer to the plaintiffs of such shares received by the defendants as commissions, as they possessed at the date of the filing of the bill.

The case was heard by the chief justice on the report and exceptions, and reserved for the determination of the full court.

*Woodbury*, for Parrott's executor.

*Bartlett*, for the plaintiffs.

BY THE COURT. 1. The appointment of Mr. Woodbury, who had previously acted as counsel for Head in the cause, to be his guardian *ad litem*, upon its being suggested that he had become insane pending the suit, was according to the usual chancery practice, and justified proceeding with the suit against Head, without notice to the guardian appointed in another state. The former decree was therefore binding upon Head as well as Parrott at the time it was entered.

2. By that decree it was determined that Parrott, while holding the relation of agent to the plaintiffs, and Head, knowing of that relation, united as partners in obtaining shares of stock in the Glace Bay Mining Company, to which the plaintiffs were in equity entitled. Parrott and Head were therefore jointly and severally liable to account to the plaintiffs for all such shares obtained by them as the profits of that fraud, and for the dividends subsequently accruing upon those shares. 1 Lindley on Part. (2d ed.) 376, 377. Story on Part. §§ 108, 166.

3. The shares thus fraudulently obtained by the defendants, and belonging in equity to the plaintiffs, should be replaced to the extent of the other shares held by Parrott and Head at the time of the filing of the bill.   2 Story Eq. §§ 1263, 1264.

4. Head having died since the case was fully argued and an interlocutory decree made upon the merits and the case referred to a master to state the account, and Parrott, his surviving partner, having been fully heard before the master and before the court on exceptions to his report, a final decree for the plaintiffs should be entered *nunc pro tunc* as of the date of that interlocutory decree.   *Campbell* v. *Mesier*, 4 Johns. Ch. °334, 342 note. *Bank of United States* v. *Weisiger*, 2 Pet. 331, 481.

All the exceptions to the master's report are therefore overruled, and the case recommitted to him to report the form of a
*Final decree for the plaintiffs accordingly.*