## ISAAC P. HAZARD *et al. vs.* THOMAS C. DURANT *et als.*

In an equity suit brought by certain stockholders for themselves and such other stockholders as might join them against D., an officer of the corporation, and against the corporation, charging D. with the misappropriation of the corporate funds:

It appearing that D. was liable as trustee for converting the funds:

*Held,* that D. was also liable for the profits made by his investment of the funds converted.

It not appearing that D. made any profit or more than simple interest from a portion of the converted funds not invested:

*Held,* that as to such portion he was chargeable only with simple interest, not with compound.

The complainants moved for an allowance of two per cent. on the amount found due from D. to be given them for " their costs, expenses, and services."

*Held,* that such an allowance savored of champerty and was inadmissible.

*Held,* further, that the complainants should be allowed costs as between solicitor and client, to be a first lien on the amount actually recovered.

*Query,* whether the complainants should be allowed their reasonable personal expenses incurred in prosecuting the suit ?

It appearing that the corporation was in the hands of a receiver:

*Held,* that the residue of the amount received was subject, *first,* to the debts of the corporation, and *second,* to a distribution among stockholders *pro rata.*

*Query,* whether holders of stock paid for from the converted funds were entitled to share in a *pro rata* distribution ?

A judgment *nunc pro tunc* in case of death is proper only when a party dies after hearing, while the case is under advisement, or after the case has proceeded so far that judgment can be entered, if not as a merely formal act, at least without the need of further inquiry on evidence into matters of fact involved in the controversy.

Motion was made for the entry of a decree *nunc pro tunc* against two deceased respondents to a bill in equity, which had been taken against them while living *pro confesso,* to charge them with liability for the transfers of certain stock made after the bill was filed, and hence not charged in it, because such transfers were in breach of their duty as trustees and in violation of an injunctive order issued against a third respondent who was a co-trustee. The only relief specifically prayed in the bill against the two respondents in question was an injunction against making certain payments and transfers.

*Held,* that this relief specifically prayed for was the only relief warranted without inquiry and evidence *aliunde.*

*Held,* further, that even if relief could be given on the record it must be by proceedings under an order to account if the decree *nunc pro tunc* rested on a breach of trust, and in such proceedings the accounting parties having entered an appearance were entitled to be notified and heard.

*Held,* further, that the court had no power to enter an order against a deceased contemnor if the decree *nunc pro tunc* rested on the violation of an injunction.

*Held,* further, that the respondents could not be affected by the proof adduced in proceedings against a third respondent to which they were not parties.

*Held,* further, that the motion to enter the decree *nunc pro tunc* must be dismissed.

## 26                    HAZARD v. DURANT.

BILL IN EQUITY charging fraudulent conversion of funds and praying for an account and an injunction. On motion for a decree.

The former proceedings in this case are reported in 9 R. I. 602, 11 R. I. 195, and 12 R. I. 99.[1] The master's report made under the decree printed 12 R. I. 101, was filed January 15, 1881, and was recommitted by order of the court February 24, 1882. The master filed his supplemental report April 6, 1882. The complainants excepted to this report, and subsequently submitted a draft which they asked the court to enter. The respondent Durant being in contempt was not heard.

*Providence, November* 25, 1882. DURFEE, C. J. The complainants ask the court to enter a decree against the defendant Durant for a sum which, as computed by them up to July 1, 1881, amounts to $15,528,549, and which with added interest would be much greater now. The sum is immense, but its magnitude results chiefly from following a large part of the funds converted by Durant into their investment in the stock of the Credit Mobilier of America, a stock which yielded prodigious profits, and, in a less degree, from computing interest on said profits, and on the residue of the funds converted at seven per cent. per annum, and compounding it. In so far as the amount claimed is augmented by so following the funds, we discover no error. But we do not think the interest should be compounded. The decree under which the cause went to the master to take the account directed simple interest only. The complainants do not say why they ask to compound it. We suppose it is because they think Durant, being chargeable as a trustee, ought to be punished for his fraud. This is not the principle on which compound interest is usually allowed. The principle on which it is usually allowed is that the trustee has either actually or presumably made it or ought to have made it. *Attorney General* v. *Alford*, 4 De G., M. & G. 843, 851 ; *Penny* v. *Avison*, 3 Jur. N. S. 62 ; *Burdick* v. *Garrick*, L. R. 5 Ch. App. 233. The evidence here does not show that Durant made more than simple interest on moneys not invested in Credit Mobilier

---

[1] In 11 R. I. 195, and 12 R. I. 99, the name of the respondent should be Thomas C. Durant, not Thomas J. Durant as there printed.

stock, but rather that he speedily consumed or lost them. The master who was directed to report all profits beyond simple interest has reported no profits on this part of the funds. In the first of the cases above cited Lord Cranworth said that a trustee might as well be charged with more principal than he had received as to be charged with more interest as a punishment. Lord Hatherly, approving the decision of Lord Cranworth, said : " The court does not proceed against an accounting party by way of punishing him for making use of the plaintiff's money by directing rests or payment of compound interest, but proceeds upon this principle, either that he has made, or has put himself into such a position as that he is to be presumed to have made, five per cent. or compound interest as the case may be." It is doubtless true that there are cases which countenance the charging of compound interest by way of punishment for gross fraud or breach of trust ; but, even if they are right and a punitive charge is sometimes allowable, we are not satisfied that this is a case for allowing it. Let the interest be changed to simple interest.

The draft decree, proposed by the complainants, directs that out of the amount received from Durant a percentage on the amount decreed to be due from him shall first be paid " to the complainants in the cause, as and for an allowance to them for their costs, expenses, and services in the cause, said percentage to be divided and apportioned among the said complainants according to their expenditure of money, time, and labor in the cause." The counsel for the complainants suggests two per cent. as a reasonable percentage. Two per cent. on $15,528,549.00 amounts to $310-570.78, which seems to us, in our way of thinking, a very large sum. The counsel does not cite any precedent for it, nor does he claim that any exists. We are confident there is none. Such an allowance would savor too much of champerty. If the practice of making such allowances were introduced it would bring with it the mischiefs of champerty, and bring them too in an aggravated degree, since the percentage proposed is not a percentage of the amount recovered, which is ordinary champerty or maintenance, but a percentage of the amount decreed, and might exceed the amount recovered. Such a practice in cases like this would probably lead to a general scramble among stockholders for the chance

of bringing and conducting the suit, with the result that different stockholders would begin different suits in different states, and compete with one another for the first decree. It would tempt directors to collude and refuse to sue in the name of the corporation, so as to give some favored director the opportunity to enrich himself by the suit. It would have a tendency to encourage fraud, perjury, and subornation of perjury. It may be thought that the practice, being under the control of the court, would not incur these dangers, but experience shows that when a practice gets entrenched in precedent it too often controls, instead of being controlled, by the court. The only case which has come to our knowledge in which a similar allowance, but in a much less objectionable form, was asked for, is the case, recently decided in the Supreme Court of the United States, of *Trustees* v. *Greenough*, 15 Otto, 527. That was a suit by a creditor for himself and other creditors. It resulted, after more than eleven years of litigation, in immense advantages to himself and his fellow-creditors. In the court below he procured a decree allowing him, first, his reasonable costs, counsel fees, charges, and expenses incurred in the fair prosecution of the suit, or, in other words, costs as between solicitor and client; and, second, a large sum for personal services and expenses, to wit, $34,625 for services, and $15,003.35 for expenses. The Supreme Court affirmed the allowance first noted, but refused any allowance for personal services and expenses. The court say : " It would present too great a temptation to parties to intermeddle in the management of valuable property or funds in which they have only the interest of creditors, and that, perhaps, only to a small amount, if they could calculate upon the allowance of a salary for their time, and of having all their private expenses paid. Such an allowance has neither reason nor authority for its support." On the authority of this decision we direct that the decree be changed so as to allow the complainants only costs, to be taxed as between solicitor and client, to be first paid out of the amount recovered.

The draft decree next directs the payment of stockholders who have already become parties complainant in this suit in preference to other stockholders. The counsel cite no precedent for such a preference, and we cannot imagine on what ground it can be asked

for. The moneys converted by Durant belonged to the corporation, and therefore belong to the corporation now, or, after the payment of the debts of the corporation, to all the stockholders proportionately to their stock. The only right which the complainants have to sue is that the corporation has refused to sue, and therefore they must hold what they recover as the corporation would have held it if it had sued. Accordingly, after payment of costs as aforesaid, the remainder of what is recovered should be distributed *pro rata* among the stockholders, unless it is needed to pay the debts of the corporation. The decree should afford an opportunity to prove such debts; for it has come to the knowledge of the court that the corporation is in the hands of a receiver, and it would be manifestly inequitable to divide the fund among stockholders if there be creditors who cannot be otherwise paid. If there are any stockholders who should be excluded from *pro rata* participation, it is possibly the holders of stock paid for by the converted funds, but even they should have an opportunity to present their claims and be heard on them. The decree should therefore be modified in this respect, or directions should be reserved for distribution, until after the fund or some part of it beyond what is necessary to satisfy the primary charge has been brought into court.

The draft decree makes the first payment under it a primary charge or lien, not only on what is recovered, but also on " all stocks, bonds, or other securities directed by any decree, made or to be made, to be transferred, deposited, or handed over by the defendants." We think it is only stocks, bonds, and securities received or recovered that should be charged; for, so far as we know or have reason to suppose, said stocks, bonds, and securities are held out of the State, and, of course, the court cannot create a charge or lien on property not within its jurisdiction by merely decreeing it.

When the draft decree has been changed in these respects and blanks filled, we see no reason why it may not be entered.

Decree entered *December* 2, 1882. " *And now on this second day of December,* A. D. 1882, *this cause having heretofore been heard upon exceptions to the report of the master, and having been*

*considered by the court, it is thereupon ordered, adjudged, and
decreed by the court as follows :*

" *First. That the complainants' exception No.* 10 *to the report
of the master be sustained, and that in other respects said report
be confirmed absolutely.*

" *Second. That the defendant Thomas C. Durant is accountable
for and do within ninety* (90) *days from the date hereof pay the
sum of sixteen millions seventy one thousand six hundred and fifty
nine* $\frac{97}{100}$ (16,071,659.97) *dollars, with interest from this date, the
said sum with interest thereon to be deposited in the registry of this
court, or to be paid in the first instance to Rowland Hazard, of
South Kingstown, in said State, and Henry Martin, of Brooklyn,
in the State of New York, who are hereby appointed special com-
missioners with authority jointly or severally to collect and receive
the same, and with power to take such steps to collect the same as
may be necessary and according to law, and said fund or so much
thereof as may be collected by process, or otherwise, is hereby di-
rected to be paid and deposited into the registry of this court to the
credit of this cause.*

" *Third. Of the aforesaid total sum of* 16,071,659.97 *dollars,
the defendant Thomas C. Durant is hereby allowed and is decreed
to be entitled to pay and discharge* 8,816,232.93 *dollars or any part
thereof* pro tanto, *by transferring and delivering stock of the Union
Pacific Railroad Company, and first mortgage and sinking fund
bonds of said company, as per statement G, now exhibited to the
court, and directed to be filed in this cause, with all dividends which
may have been collected or received by said defendant or his assigns
after the date of this decree, together with interest on the same to
the date of payment thereof by said defendant, the certificates of
said stock with transfers thereof, and the said bonds to be delivered
to the said Rowland Hazard and Henry Martin, who are hereby
appointed special commissioners to receive the same, and who are
hereby authorized and directed to sell the same, or such portions
thereof as may be delivered to them from time to time as they are
received at public auction, and receive the proceeds thereof, and
after deducting the costs and charges of such sales deposit the same
in the registry of this court to the credit of this cause, provided,
however, that the said privilege hereinbefore granted to the defend-*

ant *Thomas C. Durant, to transfer and deliver said stock and bonds in partial discharge and payment of the sum hereinbefore decreed to be paid by him, be exercised by him within thirty days from the date of entry of this decree; and that in default of such transfer and delivery, or of the transfer and delivery of the entire amount of said stock and bonds within the said thirty days, the obligation of the defendant Thomas C. Durant to pay the said proportion of the said sum, or of the residue of the same after deducting the amount of such stocks and bonds as may be delivered as aforesaid at their face value, shall become and is hereby declared to be absolute. And provided further, nevertheless, that the said option or privilege of the said Thomas C. Durant shall not interfere in any manner with any order or decree in the cause touching the transfer, delivery, sale, or other disposition of said stock and bonds.*

"*Fourth. The defendant Thomas C. Durant is likewise ordered and directed to transfer and deliver within thirty days from the date hereof five thousand seven hundred and seven* $\frac{45}{100}$ *(5,707.45) shares of the stock of the Credit Mobilier of America; which stock has been found by the master to have been purchased with the funds of the Credit Mobilier, and* which stock, with any dividends or profits accrued or to accrue on the same, is hereby declared to be the property of said corporation subject to the decrees and orders in this cause; with any interest, dividends, rights, benefits, and profits which may have accrued to the said Thomas C. Durant, as the holder of the said 5,707.45 shares of stock or any part thereof, and not hereinbefore charged against him, said transfer and delivery to be made to the said Rowland Hazard and Henry Martin, or either of them, as special commissioners, with power, which is hereby granted to said commissioners forthwith, to take such measures by suit or suits in their own names, or otherwise, as they may be advised is lawful and necessary to enforce such transfer, collection, or delivery, and said stock to be held by said commissioners subject to the further order of the court in this cause.*

"*Fifth. All interlocutory injunctions heretofore made in this cause, so far as consistent with this decree, are declared to be and are hereby made perpetual, and the further consideration of the cause, and particularly as to allowances to the complainants for costs, expenses, and services, and as to the distribution of the fund*

*that may be deposited in the registry of the court to the credit of this cause, and also the consideration of any order or decree which may be necessary in the premises against the defendant Thomas C. Durant, by reason of any default which may be made by him touching any portion of this decree, and also the consideration of any other and further decree herein against or concerning the defendants, other than the said Thomas C. Durant, be and they hereby are directed to stand over, with leave to any party in interest, save parties in contempt or parties who may appear to be for any other cause disqualified, to apply at any time for further orders and directions.*

" *Sixth. It is further ordered that the complainants forthwith cause a certified copy of this decree to be delivered to Samuel R. Honey, Esq., of counsel for said Thomas C. Durant, and proof of such delivery, and the time and place thereof, to be filed in the clerk's office of this court in said county.*"

NOTE BY THE CHIEF JUSTICE. — In the decree which was entered, after delivery of the opinion, no order was made for allowances in regard to costs, services, and expenses, or for the distribution of the fund, directions in respect thereof being reserved until the fund or some part thereof shall be recovered, the complainants being desirous of a rehearing on those points, and the court itself being disposed to reconsider the decision in so far as it disallows any claim for personal expenses actually incurred in the reasonable prosecution of the suit.

*George T. Bispham & Edwin Metcalf*, for complainants.

After the above decree of December 2, 1882, had been entered, the complainants asked the court to enter a decree *nunc pro tunc* against two of the respondents, Oliver Ames, who died March 20, 1877, and John Duff, who died October 26, 1880. The circumstances and grounds of this motion, and the character of the decree asked for are stated in the opinion of the court.

*Providence, July* 14, 1883. DURFEE. C. J. This is a motion to the court to enter a decree *nunc pro tunc* against Oliver Ames and John Duff, defendants who are now deceased, Ames having died March 20, 1877, and Duff, October 26, 1880. The ground of

the motion is that the bill was taken *pro confesso* against them when living, to wit, in 1869; and that great injustice will come from not entering the decree, because they died resident in another state, leaving no estate in this jurisdiction on which administration can be granted. The counsel moving for the decree seem to have industriously hunted up the precedents, but they produce no precedent for a decree *pro confesso*, or for a *nil dicit* judgment *nunc pro tunc*, against a defendant, after his decease, when no motion for it had been either heard or made during his lifetime. In *Wilkes* v. *Perks*, 5 M. & Gr. 376, the plaintiff applied to sign judgment on the 3d of January, when the time for pleading expired; but, upon a suggestion of the officer that there was a doubt whether three days, which had been made holidays, were to be counted in the time for pleading, delayed it. The defendant died the same day, and the court refused judgment; the delay being the delay of the party and not of the court. Possibly, however, a decree *pro confesso* may be proper against a defendant dying after the bill has been taken for confessed against him, if a final decree can be made simply on the allegations contained in the bill, without inquiry and evidence *aliunde*, and if the defendant, having entered no appearance, can be presumed to have abandoned his right to be heard.

The bill here shows that Ames and Duff were, with five others, trustees of the Oakes Ames contract, so called, under a trust to pay the profits accruing from it to the stockholders of the Credit Mobilier of America, *pro rata*, according to the shares which they respectively held. The bill also avers that the shares of stock of the Credit Mobilier, standing in the name of the defendant Durant, are in equity the property of the Credit Mobilier, having been purchased or paid for out of funds belonging to it, fraudulently misappropriated by said Durant. One purpose of the suit was to recover this stock from Durant, together with the profits and dividends which he had received on it, and to prevent his receiving any profits or dividends, not previously paid to him, arising out of the Oakes Ames contract, which had accrued, or which might accrue, after the filing of the bill. In furtherance of this purpose the bill prays that the trustees may be restrained from paying or delivering to or upon the order of Durant any

dividends, earnings, shares, stock, or bonds by them held, or to be held, or received under the Oakes Ames contract, &c. This is the only relief that is specifically prayed for in the bill against Ames and Duff, and it is the only relief which is warranted without inquiry and evidence *aliunde;* for, though the bill contains allegations which imply that the trustees have received or will receive, under the Oakes Ames contract, profits to which the Credit Mobilier is or will be entitled by reason of Durant's fraud, the allegations are too vague and problematical for the court to give any final relief except by way of injunction upon them. If any other decree could be entered against Ames and Duff without further allegations, it would be a decree for an account of profits under the Oakes Ames contract; and under such a decree sending the cause to a master to take the account, they would, of course, be entitled to notice and to be heard, having appeared to the bill. In *King* v. *Bryant,* 3 Myl. & C. 191, Lord Cottenham said : " The court punishes the defendant's default in refusing to answer by giving the plaintiff the benefit of a decree upon the bill as confessed ; but there the advantage stops, and when the decree is once pronounced, the subsequent duty of the court and its officers is to execute the decree in the ordinary way. Accordingly, no authority is to be found in support of the proposition that, upon a decree taking the bill *pro confesso,* and directing an account, the account may be prosecuted *ex parte.*" Moreover, we have a statute which provides that "no suit or motion in equity shall be heard, except a motion for preliminary injunction, or for a writ *ne exeat,* until reasonable notice of such hearing shall have been given to the adverse party or to his attorney." Gen. Stat. R. I. cap. 181, § 10, and Pub. Stat. R. I. cap. 192, § 13. Of course there can be no proceeding against a party after his death, if he is entitled to notice of it and to be heard in it. The case of *Jennings* v. *Ashley,* 5 Ark. 128, is in point here, notwithstanding that it was an action at law, for the rule is essentially the same both at law and in equity. In that case the defendant died after the action was entered, but without answering, and the court held that it was error to enter judgment against him *nunc pro tunc,* a writ of inquiry to inquire of the damages being necessary after the judgment by default. The complainants rely especially on the

case of *Emery* v. *Parrott*, 107 Mass. 95. That was a suit in equity against two defendants adjudged by the court to be partners in the matter in litigation. One of them died "after the case was fully heard and an interlocutory decree made upon the merits, and the case referred to a master to state the account," and the other defendant, "his surviving partner, having been fully heard before the master, and before the court on exceptions to his report," the court held that a final decree for the plaintiffs should be entered *nunc pro tunc,* as of the date of the interlocutory decree. The decision goes further than any other decision with which we are acquainted, and is not supported by the cases cited as authority for it. The cases cited as authority are: *Campbell* v. *Mesier,* 4 Johns. Ch. 334, 342, and *Bank of the United States* v. *Weisiger,* 2 Pet. 331, 481. The case of *Campbell* v. *Mesier* was the ordinary case of a judgment *nunc pro tunc,* where the party dies after a case has been submitted on argument or hearing and before judgment. And, so far as we can discover, the other case was the same. In *Emery* v. *Parrott* the court evidently reconciled itself to going so far as it did by the consideration that though one of the defendants was dead, he was represented in the subsequent proceedings before the master and the court by the other defendant, who was his surviving copartner. Here we are asked, not only to go further than the court went there, but to do so without the justification which the court there had; for here, Ames and Duff both being dead, any further proceedings against them would necessarily be entirely *ex parte.* One inquiry in regard to the practice of entering judgments *nunc pro tunc* has led us to think that such a judgment on account of death is proper only where a party dies after hearing, while the case is under advisement, or after the case has proceeded so far that judgment can be entered, if not as a merely formal act, at least without the need of further inquiry on evidence into matters of fact involved in the controversy. Freeman on Judgments, §§ 56–63; *Turner* v. *London and Southwestern Railway Co.* L. R. 17. Eq. 561.

In the case at bar the bill was filed August 22, 1868. The same day Durant was forbidden, by injunction issued and served on him, to receive or dispose of any dividends then or subsequently declared on his stock in the Credit Mobilier, above men-

tioned.    No injunction ever issued against Ames and Duff.    The decree here proposed recites that Ames and Duff, confederating with Durant and the other trustees under the Oakes Ames contract, transferred and delivered to Durant, on December 28, 1868, eleven thousand three hundred and sixteen shares of the capital stock of the Union Pacific Railroad Company; and, on February 1, 1870, transferred and delivered to Durant income bonds of said railroad company of the par amount of $700,000 and fourteen thousand shares of the capital stock of said company, all said shares and bonds being dividends of profits under said contract, payable on account of said shares of Credit Mobilier stock standing in the name of Durant, and alleges that Ames and Duff, so confederating, transferred and delivered said shares and bonds in violation of the rights of the complainants and other stockholders of the Credit Mobilier, and also in violation of the injunction against Durant.    After this recital the decree proposed goes on to adjudge and decree that Ames and Duff are jointly and severally liable to account for and pay, and that they do jointly and severally pay to the complainants the full value of said shares and bonds, the decree being drawn with blanks for the insertion of the values when ascertained.

It thus appears that the purpose of the decree is to make Ames and Duff liable for transfers of stocks and bonds which were made after the bill was filed, and which, of course, are not alleged in it. Indeed the bill does not really allege that any of the stock or bonds had come to the hands of the trustees when it was filed, and we infer that a large part of them were not even earned until afterwards.    The ground of the proposed decree must be either that Ames and Duff are liable as trustees for breach of trust or for contempt for violation of the injunction.    It seems to us, if the decree proceeds on the first ground, that inasmuch as the relief is sought on account of facts which have occurred since the bill was filed, the facts, being traversable, ought properly to be brought upon the record either by a supplemental bill, or by supplemental allegations by way of amendment in the original bill. "No facts are properly in issue," says Story in his work on Equity Pleading, "unless charged in the bill, and of course no proof can be generally offered of facts not in the bill; nor can relief be

granted for matters not charged, although they may be apparent from other parts of the pleadings and evidence ; for the court pronounces its decree *secundum allegata et probata.*" Story Eq. Plead. § 257. If, however, relief can be granted on the bill as it stands, it can only be granted, according to the regular course of equity practice, under an interlocutory decree for an account, and on a proceeding under such a decree, as we have already seen, Ames and Duff would be entitled to notice and an opportunity to be heard. If, on the other hand, the ground of the decree is contempt, then most clearly there must be some proceeding against them for contempt before they can be charged by way of punishment with damages. A *nunc pro tunc* proceeding for contempt against contemnors after their death would be something utterly unprecedented, and, in our opinion, utterly inadmissible.

The complainants urge, in support of their motion, that the facts on which they ask us to enter the decree were proved, in the lifetime of Ames and Duff, in the proceeding against Durant for contempt violating the injunction. Ames and Duff, however, were not parties to that proceeding, and therefore we do not see how they can be prejudiced by either the evidence or the adjudication therein. And even if the evidence and adjudication could be used against them, it does not follow that they could not, if heard, show that they were innocent of any complicity in the contempt, or that, if not innocent, they were at least not responsible for the more serious consequences of it. The complainants virtually ask us to assume, without hearing them in defence, that they must be guilty, and must be without any excuse which could lessen their liability ; and yet for us to do so would be against the first principles of jurisprudence.

Finally the complainants urge that if the decree is not entered they must suffer an irremediable loss. We do not see that it follows that the complainants have no remedy anywhere because they have no remedy in this jurisdiction, where Ames and Duff have left no estate to answer a judgment against them. But if it does follow, we nevertheless have no right to let a " hard case " seduce us into " bad law." Rather ought we to say, as said the Court of Common Pleas in *Freeman* v. *Tranah*, 12 C. B. 406, 413, when urged to enter judgment *nunc pro tunc* on the ground of

hardship, that "although instances are constantly occurring where the courts might profitably be employed in doing simple justice between the parties, unrestrained by precedent or by any technical rule, the law has wisely considered it inconvenient to confer such power upon those whose duty it is to preside in courts of justice."                                         *Motion dismissed.*

*Elias Merwin & Edwin Metcalf,* for complainants, in support of the motion.

. *Sidney Bartlett, Robert D. Smith & Samuel R. Honey, contra.*