CHANDLER, Receiver, *v.* BACON and others.    (No. 1,992.)

BROWNE *v.* NATIONAL COLOR PRINTING CO.    (No. 1,790.)

*(Circuit Court, D. Massachusetts.    March 28, 1887.)*

1. CORPORATIONS—PROMOTERS—STOCK—FRAUD.

B. and C., as promoters of a projected corporation, negotiated an agreement between the owners of certain patents, and the corporation to be formed, by which B. and C. were to receive 3,750 shares of the capital stock of the new company, less 625 shares, which they were to assign to P. B. and C. offered the public an option to take stock in the new company, disclosing the purchase of the patents, and that a portion of the stock was to be issued to the former owners in part payment, but not informing purchasers that they were to have stock on any different terms or conditions. It was further agreed that B. should be president and C. treasurer of the corporation, and they were so elected, and placed a large amount of stock at seven dollars a share, obtaining their own stock for nothing. *Held* that, as promoters of the new company, they occupied a fiduciary relation towards it, and had no right to derive any advantage over other stockholders without a full and fair disclosure of the transaction, and that any secret profits made must be refunded to the company

2. SAME—RIGHTS OF CORPORATION.

In such a case, the corporation has a right to elect (1) whether the shares should be transferred back to it; or, (2) if the shares have been sold, their entire profits made by the sale should be turned over; or (3) that it should be paid the sum lost by reason of being deprived of the right to place such shares with other persons at seven dollars per share.

3. SAME—PARTNERSHIP.

B. and C., as promoters of the new corporation, having signed the secret agreement as parties of the second part, and acted in concert to promote a common purpose for their common benefit, they became jointly and severally liable to account, as partners, whatever may have been their private intention.

In Equity.    Intervening petition of E. Ernest Caduc.

*R. M. Morse* and *A. D. Chandler*, for Chandler, receiver.

*J. R. Bullard*, for Bacon and Caduc.

Colt, J. These cases were heard on exceptions to the master's report. The master found that the defendants Bacon and Caduc were promoters of the National Color Printing Company; that, as such promoters, they negotiated an agreement between the owners of certain patents and the National Color Printing Company to be formed, by which, among other things, they were to receive two-sixteenths or 3,750 shares of the capital stock of the new company, less 625 shares, which they were to assign to Robert A. Piper; that the defendants offered to the public an option to take the stock in the new company, disclosing the fact of the purchase of the patents, and that a portion of the stock in the company was to be issued to the former owners of the patents in part payment therefor, but not informing the persons who subscribed for the stock that they were to have stock on any different terms or conditions. The master further finds that, at the time the agreement was signed, an understanding was arrived at between the defendants and the officers of the United States Label, Card & Tag Company, the owners of the patents purchased, that the defendant Bacon should be president of the new company, and the defendant Caduc treasurer, and that, pursuant to this agreement, these officers were elected; that the defendants obtained for themselves these positions, and the control of the books of the new company; that they placed a large amount of stock at the uniform price of seven dollars a share; and that, under the agreement, they obtained 3,125 shares of stock, without paying anything into the treasury of the company, as all other persons did who subscribed for the stock upon the solicitation of the defendants, or upon the solicitation of other persons whom the defendants had interested in said company. The master further finds that the defendants were partners, and that they should pay the receiver at the rate of seven dollars per share for each of the 3,125 shares of stock received by them, with interest from September 23, 1880, amounting to the total sum of $28,794.78, less $17,289.55, the amount the master finds, in cause No. 1,790, the defendant Caduc advanced to the company. The defendants object to the finding of the master that they received 3,125 shares to their own use, without payment of seven dollars per share, because they say that he disregards the fact that said shares had been fully paid for, and that the Color Printing Company had received full value therefor, and that the United States circuit court of New Jersey had decreed that these shares were fully paid and properly issued. It appears that Judge Nixon, upon an application by the present receiver, held that these shares in question were full-paid stock for the property purchased, and therefore not liable to assessment, but he also subsequently said that no decision was made as to the validity of the issue of this stock to these defendants, and it was his intention simply to instruct the receiver not to assess this stock.

The question before us now is not whether these shares are to be considered as full-paid stock, but whether these defendants, as promoters of the new company, could take them without consideration, while other stockholders paid seven dollars per share. Clearly, they could not lawfully do this. As promoters of the new company, they occupied a

# 540

fiduciary relation towards it similar to that of agent to a principal, and they had no right in these negotiations to derive any advantage over other stockholders without a full and fair disclosure of the transactions, and any secret profits so made they must refund to the company. That this may have been done without any fraudulent intent, or that the price paid for the patents was fair and reasonable, cannot relieve these defendants. The law forbids them, from their position, to secretly derive any benefit over other stockholders, and makes them accountable to the company for any profit so derived. *Bagnall* v. *Carlton*, 6 Ch. Div. 371; *Whaley, etc., Co.* v. *Green*, 5 Q. B. Div.109; *New Sombrero Phosphate Co.* v. *Erlanger*, 5 Ch. Div. 73; *Emma Silver Min. Co.* v. *Grant*, 11 Ch. Div. 918; *Densmore Oil Co.* v. *Densmore*, 64 Pa. St. 43; *McElhenny's Appeal*, 61 Pa. St. 188; *Simons* v. *Vulcan Oil, etc., Co.*, Id. 202; *Emery* v. *Parrott*, 107 Mass. 95; *Getty* v. *Devlin*, 54 N. Y. 403.

The finding of the master that the defendants should pay seven dollars a share is objected to as without warrant of law, and it is contended that the defendants are only liable to account for the shares themselves, or for the profit, if any, they have made upon them. I think the company had a right to elect (1) whether they would have the shares transferred back to them; or, (2) if the shares had been sold, that these defendants should turn over the entire profit made by the sale; or (3) that the company may say: "Although you may have derived no profit by selling the shares, yet you deprived us of placing them with other persons, and you must therefore pay us the sum we have lost by reason of our being deprived of the right of placing these shares with other persons." *Carling's Case*, 1 Ch. Div. 115, 126, 127; *McKay's Case*, 2 Ch. Div. 1; *De Ruvigne's Case*, 5 Ch. Div. 306; *Nant-y-glo, etc., Co.* v. *Grave*, 12 Ch. Div. 738. The last measure of damages has been adopted by the master in this case. It is in proof that a large amount of the stock of the company was placed at a uniform price of seven dollars a share, and the defendants are called upon to account for their stock at this price. I can see no error in this finding of the master.

As to the third exception, the master properly said that there was no evidence that the defendant Bacon, upon request of the plaintiff, delivered up to him, before the proceedings, 750 of the shares in question, and that, therefore, Bacon must be charged as found.

The remaining exception is to the master's finding that the defendants were partners, and as such are jointly and severally liable to the complainant. These defendants signed the secret agreement as parties of second part, and they were acting in concert to promote a common purpose for their common benefit, and consequently they were jointly and severally liable to account to the complainant. When the conduct of parties operates as a fraud or deceit upon third persons, whatever their private intention, the relation of partnership may be said to exist as to such third persons. Story, Partn. § 49; *Emery* v. *Parrott*, 107 Mass. 95.

The only exception in case No. 1,790 to the master's report relates to the rejection by the master of certain items in the claim of the intervening petitioner, Caduc, against the National Color Printing Company.

Caduc testifies that the loans covering the items in question were made by the Goodyear Dental Vulcanite Company, of which he was treasurer. That company, after the appointment of Mr. Chandler as receiver of the Color Printing Company, claimed from him the balance due upon these loans, and the receiver settled the claim, taking a full release from the Goodyear Company. If Caduc had no authority to thus use the money of the Goodyear Company, that question cannot affect the rights of the receiver in this case. Whether made without authority or otherwise, the loans, upon the evidence, were made by the Goodyear Company, and not by Caduc, and the finding of the master is therefore correct.

The exceptions to the master's report in each case must be overruled.