|      |      |
|------|------|
| 210  | 311  |
| 216  | 4628 |

## Humbird *v.* Davis, Appellant.

*Actions—Joint actions—Parties plaintiff—Secret profits—Partnership.*

Where several persons combine together to raise a fund which they hand over to one of their number to be used by him as their agent in buying a mine, and the agent is discovered to have made a secret profit in the purchase of the mine, the parties injured may maintain a joint action of assumpsit, for money had and received, against the agent to recover their share of the secret profits; and in such a case it is immaterial that the contributions of the plaintiffs to the fund were in unequal amounts.

When a joint deposit is made in the usual course of business, a joint action cannot be defeated by proof that it was owned in different proportions by the depositors. The difference in their interests and whether they be separate or joint, is a matter resting with themselves, with which the recipient of the money has nothing to do.

Where the defendant is proved to have in his hands the money of the plaintiff, which æquo et bono, he ought to refund, the law conclusively presumes that he has promised so to do, and the jury are bound to find accordingly; and, after verdict, the promise is presumed to have been actually proved.

The count for money had and received may be supported by evidence that the defendant obtained the plaintiff's money by fraud, or false color or pretense. So, if the money of the plaintiff has in any other manner come to the defendant's hands for which he would be chargeable in tort, the plaintiff may waive the tort, and bring assumpsit upon the common counts.

Argued Oct. 27, 1904. Appeal, No. 68, Oct. T., 1904, by defendants from judgment of C. P. No. 2, Allegheny Co., Jan. T., 1901, No. 738, on verdict for plaintiffs in case of James S. Humbird et al. v. Edward J. Davis and W. E. Griffiths. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and THOMPSON, JJ. Affirmed.

Assumpsit for money had and received. Before SHAFER, J.
The facts appear by the opinion of the Supreme Court.

The defendants presented the following points :

1. The plaintiffs have failed to show any right of action
against the defendants or either of them, and the plaintiffs,
therefore, are not entitled to recover in this action. *Answer :*
Refused. [1]

2. That the plaintiffs have failed to show any joint obligation
or liability on the part of the defendants to them, the said plain-
tiffs, jointly, and plaintiffs, therefore, are not entitled to recover
in this action. *Answer :* Refused. [2]

3. That the plaintiffs have failed to show any joint obliga-
tion to plaintiffs either jointly or severally; the said plaintiffs,
therefore, are not entitled to recover in this action. *Answer :*
Refused. [3]

4. That the present action is simply an action of assumpsit,
based upon the waiver of an alleged tort, and in such action,
even though the defendants may have been joint tort feasors,
no implication of a joint promise can arise to make good the
alleged loss arising by reason of the alleged tort. *Answer :*
Refused. [4]

8. That in no phase of the case can plaintiffs recover in an
action of assumpsit. *Answer :* Refused. [5]

9. That under all the evidence in the case the verdict of the
jury must be in favor of the defendants. *Answer :* Refused.
[6]

10. Defendant Griffiths asks the court to charge the jury
that as plaintiffs' action is based on deceit, and there is no evi-
dence that defendant Griffiths participated in, or had any
knowledge of, such alleged deceit, the verdict of the jury must
be in favor of Griffiths. *Answer :* Refused. [7]

Verdict and judgment for plaintiffs for $42,958.49. Defend-
ants appealed.

*Errors assigned* were (1–7) above instructions, quoting them.

*J. S. Ferguson,* with him *E. G. Ferguson,* for appellant.—If
a tort has once been waived, the defendant cannot afterwards
be treated as a wrongdoer : Lythgoe v. Vernon, 5 H. & N.
180.

The old rule was that what was tort in its inception could not by any subsequent transaction be made the foundation of implied assumpsit: Jones v. Hoar, 22 Mass. 285; Thompson v. Bond, 1 Camp. 4.

Each of the plaintiffs in this case has held on to what he got. The case, therefore, is not like Smith v. Bellows, 77 Pa. 441.

The tort which may be waived to ground an action of assumpsit must not rest in pure invention: Girard Township v. Girard Borough, 86 Pa. 23.

*John S. Wendt*, with him *Johns McCleavé*, for appellees.— Under the facts, it is clear and well settled that the plaintiffs can recover jointly against the defendants in this case: Yeaney v. Keck, 138 Pa. 532; Barrett v. Bemelmans, 163 Pa. 122; Mytinger v. Springer, 3 W. & S. 405; Griffith v. Willing, 3 Binn. 317; Steelman v. Dougty, 5 W. N. C. 166; Benjamin v. Zell, 100 Pa. 33; Lee v. Gibbons, 14 S. & R. 105; Boggs v. Curtin, 10 S. & R. 211; McIntyre v. Coal Co., 118 Pa. 108; Gilmore v. Wilbur, 29 Mass. 120; Hill v. Tucker, 1 Taunt. 7; Given v. Kelly, 85 Pa. 309; Agnew v. Johnson, 17 Pa. 373; McNair v. Wilcox, 121 Pa. 437; Meason v. Kaine, 67 Pa. 126.

Where tort is committed against several jointly, and the tort be waived and assumpsit brought, the action must be joint: Irwin's Administrator v. Brown's Executors, 35 Pa. 331.

And this is true whether the wrong is a technical or merely a fraud: Gilmore v. Wilbur, 29 Mass. 120; Reeside v. Reeside, 49 Pa. 322.

The plaintiffs may be regarded as tenants in common of the money which they jointly advanced to Davis to be used in purchasing the property, and part of which he and Griffiths converted to their own use. If this be so, they must sue jointly for the damages arising from the conversion, and if the tort be waived, still the action remains joint: Decker v. Livingston, 15 Johns (N. Y.), 479; State v. True, 25 Mo. App. 451; Little v. Harrington, 71 Mo. 390; Louisville, etc., Ry. Co. v. Hart, 119 Ind. 273 (21 N. E. Repr. 753); Gilmore v. Wilbur, 29 Mass. 120–124; Irwin's Adm'r v. Brown's Ex'rs, 35 Pa. 331; White v. Brooks, 43 N. H. 402; Hill v. Gibbs, 5 Hill (N. Y.), 56; Seay v. Sanders, 88 Mo. App. 478.

In cases of alleged combinations to defraud, the preliminary

proof of the combination has been held to be sufficient where the circumstances amount to some evidence of collusion, though slight: Rogers v. Hall, 4 Watts, 359; Gibbs v. Neely, 7 Watts, 305; Deaker v. Temple, 41 Pa. 234; Kimmell v. Geeting, 2 Grant, 125; Simons v. Vulcan Oil & Mining Co., 61 Pa. 202; McCabe v. Burns, 66 Pa. 356; Peterson v. Speer, 29 Pa. 478.

Assumpsit and not action for an account is the proper remedy to recover a share of the profit of a single joint completed transaction, as where the transaction consists of a purchase and resale: Howell v. Kelly, 149 Pa. 473; Brubaker v. Robinson, 3 P. & W. 295; Galbreath v. Moore, 2 Watts, 86; Cleveland v. Farrar, 4 Brewster, 27; Jackson v. Emmens, 119 Pa. 356; Wright v. Cumpsty, 41 Pa. 102; Meason v. Kaine, 63 Pa. 335; Miller v. Ord, 2 Binney, 382; Paton v. Clark, 156 Pa. 49; Fleming v. Alter, 7 S. & R. 295; Haldane v. Fisher, 1 Yeates, 121; Martzell v. Stauffer, 3 P. & W. 398; Bixler v. Kunkle, 17 S. & R. 298.

An action of assumpsit in Pennsylvania is a substitute for a bill in equity in many cases, and this is especially so where there is fraud or a breach of trust and no complicated accounts are involved: Lee v. Gibbons, 14 S. & R. 105.

At common law, where one tenant in common has been constituted bailiff by the others to receive the rents and profits, an action of account render can be maintained against him; and under the statute of 4 Anne, c. 16, sec. 27, which is in force in Pennsylvania, where one tenant in common receives from a third party more than his proportionate share of rents or payments due in respect of the common property, his co-tenants may maintain the action against him: McAdam v. Orr, 4 W. & S. 550; Griffith v. Willing, 3 Binn. 317; Swint v. McCalmont Oil Co., 184 Pa. 202; Winton Coal Co. v. Pancoast Coal Co., 170 Pa. 437.

Account render lies between client and attorney, Bredin v. Kingland, 4 Watts, 420; against a guardian, Irvine v. Hanlin, 10 S. & R. 219; against a trustee, Bredin v. Dwen, 2 Watts, 95 and Dennison v. Goehring, 7 Pa. 175; by a principal against agent, McLean's Ex'rs v. Wade, 53 Pa. 146.

It is settled that the action of account render lies between partners in Pennsylvania, and is to be liberally extended: New-

bold and others v. Sims, 2 S. & R. 317 ; James v. Browne, 1 Dallas, 339 ; Whelen v. Watmough et al., 15 S. & R. 153; Tutton v. Addams, 45 Pa. 67–69.

Assumpsit is a substitute for account render in Pennsylvania : Winton Coal Co. v. Pancoast Coal Co., 170 Pa. 437 ; Albright v. Mercer, 14 Pa. Superior Ct. 63 ; McFadden v. Erwin, 2 Whart. 37.

OPINION BY MR. JUSTICE MESTREZAT, December 31, 1904 :

This is an action of assumpsit brought by the plaintiffs jointly against the two defendants who are sued jointly to recover a sum of money which the plaintiffs allege the defendants unlawfully and fraudulently obtained from them. The case was submitted to the jury and the verdict in favor of the plaintiffs must be regarded as establishing the alleged fraudulent acts on the part of the defendants, that they did realize a profit in the purchase of the mine of which none of the plaintiffs had any knowledge, and that the defendants were acting together in carrying out the fraud on the plaintiffs. The questions raised on this appeal are (1) whether an action by the plaintiffs jointly will lie against the defendants and (2) whether the evidence justified a verdict against the defendants jointly.

Under the facts found by the jury, it is well settled that an action may be maintained by the injured party for his share of the secret profits realized in the transaction by the other party : Simons v. Vulcan Oil, etc., Co., 61 Pa. 202; Yeaney v. Keck, 183 Pa. 532; Emery v. Parrot, 107 Mass. 95. The parties here were engaged in a common enterprise and each was bound to act in the utmost good faith toward the others. In the purchase of the mine, the defendants were acting as the agents of their associates and could charge them only with their share of the moneys actually expended for the property. The secret arrangement by which the mine was purchased for less than the option price will inure to the benefit of the plaintiffs and the defendants alike and equity will require the latter to account for the money received from their associates in excess of what they paid the owners of the mine. The principle expressed in the following language of the court in Emery v. Parrot, supra, is applicable here: " He obtained these commis-

sions while his associates had a right to expect that he would effect and was effecting the best bargain he could for them and himself jointly and on the terms of equality. Benefits and advantages thus obtained, the principles of equity will not allow him to retain for himself. He must account for them and share them with his associates, the plaintiffs."

The facts disclosed on the trial of the case clearly warranted a joint action by the plaintiffs. In furnishing the money to the defendants to make the purchase of the property, they acted jointly and not severally. The plaintiffs formed an association having a treasurer who received the subscriptions made by the plaintiffs and, acting for them jointly and not for each of them separately, sent the common fund thus raised to Davis, whom the plaintiffs by their joint agreement authorized to act for them in the purchase of the mine. As stated by the trial judge in his opinion: " The evidence is not that each of the plaintiffs placed in the hands of Davis a distinct sum for the purpose of purchasing his share, but that all the plaintiffs contributed to the sum which was placed in Davis' hands, that sum being composed of the various unequal contributions of the plaintiffs and money raised by a joint note of the plaintiffs, or most of them, on which they were each liable for the whole." It appearing that Davis was the agent of the plaintiffs and that the money received by him was their common and joint property, deposited as such with him, the consideration would be joint and the implied promise to reimburse would be to the plaintiffs jointly and hence would support a joint action by them: Archer v. Dunn, 2 W. & S. 327 ; Mytinger v. Springer, 3 W. & S. 405 ; Boggs v. Curtin, 10 S. & R. 211. " The action of assumpsit," says GIBSON, J., in Boggs v. Curtin, " must be joint or several, according as the promise on which it is founded is joint or several. Where the promise is express, there can be little difficulty in determining to which class it belongs, as its nature necessarily appears on the face of the contract itself; and if it be joint, all to whom it is made must, or, at least, may, sue on it jointly, and after having recovered, settle among themselves the proportion of the damages to which each is respectively entitled; as in the case put in the note to Coryton v. Lithebye, (2 Saund, 116a, note 2), where there was a promise to two in consideration of ten £ to procure

the redelivery of their several cattle which had been distrained. But an implied promise, being altogether ideal, and raised out of the consideration only by intendment of law, follows the nature of the consideration; and as that is joint or several, so will the promise be." In Mytinger v. Springer, it was said by this court: "When a joint deposit is made in the usual course of business, a joint action cannot be defeated by proof that it was owned in different proportions by the depositors. The difference in their interests, and whether they be separate or joint, is a matter resting with themselves, with which the recipient of the money has nothing to do." And in Lee v. Gibbons, 14 S. & R. 105, DUNCAN, J., delivering the opinion, says: "But it is said, they should each one have brought an action for their separate proportion. The action is founded on a promise, implied or expressed. If it be on an implied promise, then it must follow the nature of the consideration, and as that is joint or several, so must the action be."

If there is a liability here on the part of the defendants to account to the plaintiffs for the money in excess of what was actually paid for the mine, it is clear that a joint action by the plaintiffs does not injure the defendants. On the contrary, it prevents a multiplicity of suits which is against the policy of the law and saves the defendants the additional costs and expense incident to an action by each of the different plaintiffs. As said by PAXSON, J., in McIntire v. Coal Co., 118 Pa. 108: "A recovery in such (joint) suit would be a bar to any subsequent action by either (of the plaintiffs) for the same cause. Aside from this, the defendant will have to incur the risk of having to pay more money with two actions than with one, besides additional costs. The only inconvenience in the case, which we can see, would be the difficulty of apportioning the damages, in case of recovery, between the life tenant and the remainderman. But this is a difficulty with which the defendant has no concern. He would be protected in any event."

It is admitted by the defendants, Davis and Griffiths, that in the purchase of the mine they realized a profit, divided equally between them, out of the money they received from the plaintiffs who were jointly interested with the defendants in the venture. The jury has found that this fact was un-

known to any of the plaintiffs during the negotiations for the purchase of the property and until a short time prior to the bringing of this suit. The evidence fully justified the jury in finding that in all his communications with the plaintiffs with reference to the matter, Davis was acting for Griffiths as well as for himself, and that his assurances to the plaintiffs that there was no profit being realized on the purchase of the property were made for Griffiths as well as himself. The only plausible theory in the case, supported by the evidence, is that Griffiths authorized, and was cognizant of, every move made by Davis toward consummating the purchase. Griffiths testified: "I introduced Mr. Davis to him (Terrazzes); told Mr. Terrazzes that Davis was a friend of mine and I had known him a great many years, and that Mr. Davis thought he could float that property and that I was willing as I was to have half the profits in that transaction, and I would divide my profits with Davis, which was all agreeable to Terrazzes. That was on my return in April, 1899. . . . I said to Terrazzes, I will be very busy about September 1st; it is a hard journey backward and forward, and Mr. Davis will take up this matter for me. I said I have every confidence in Mr. Davis and anything he does is all right, so far as this option is concerned. Q. Who conducted the transactions leading to the final purchase of the various interests in mine and mill? A. Mr. Davis. I had nothing to do with it. It was part of my agreement with Davis that he was to do this work. . . . I told Mr. Terrazzes that Mr. Davis would handle that mine; that any profits that would arise from it, though, I was to give Mr. Davis a half. Q. It was with that understanding and arrangement that Davis came north and got the persons to go into it? A. That was his mission, to see if he could raise that amount of money."

It is therefore apparent that what was done by Davis toward procuring a purchaser of the mining property was done by both himself and Griffiths. When Davis solicited the plaintiffs to join the defendants in making the purchase and made the false representations to the former that the option price was the amount actually paid for the property he spoke for both the defendants and they are both responsible for his representations. Davis' fraud was the fraud of both and

neither can escape responsibility.  Changing the names of the parties, the following language in the opinion of the court in Emery v. Parrot, 107 Mass. 95 may be pertinently quoted here: " He (Griffiths) was thus fully cognizant of the illegal conduct of Davis, and co-operated with him in inducing the plaintiffs to make the purchase.  He participated in the profits of the transaction ; and the court are of the opinion that he as well as Davis must disgorge the secret gain which they thus jointly obtained and divided with each other. "

We think the evidence in the case in hand was ample to sustain a verdict against the defendants jointly.

This was assumpsit for money had and received and we think the action was properly brought.  Under the finding of the jury the defendants unlawfully and fraudulently received the money of the plaintiffs and hence have no right to retain it.  The plaintiffs, waiving the tort, brought this action to recover the money of which they had been fraudulently deprived.  The action lies on the implied promise to repay the sum unlawfully withheld.  Mr. Greenleaf (2 Greenl. Ev. sec. 102) says: " Where the defendant is proved to have in his hands the money of the plaintiff, which aequo et bono, he ought to refund, the law conclusively presumes that he has promised so to do, and the jury are bound to find accordingly ; and, after verdict, the promise is presumed to have been actually proved."   And in section 120 of the same work it is said: " The count for money had and received may also be supported by evidence that the defendant obtained the plaintiff's money by fraud, or false color or pretense. . . . So, if the money of the plaintiff has in any other manner come to the defendant's hands for which he would be chargeable in tort, the plaintiff may waive the tort, and bring assumpsit upon the common counts. "  Mason v. Waite, 17 Mass. 560 was an action of assumpsit to recover the amount of certain bank notes, done up in a package, which were delivered by the owner to a carrier, who, without authority, paid them to a third party for a loss at a faro table.  It was held that assumpsit by the owner would lie against the party to whom they were paid.  In the opinion of the court it is said: " We do not see, however, why the action for money had and received will not lie.  The notes were paid and received as

money, and as to any want of privity or any implied promise the law seems to be that where one has received money of another, and has not a right conscientiously to retain it, the law implies a promise that he will pay it over. " These authorities are cited with approval in the opinion of this court in Hindmarch v. Hoffman, 127 Pa. 284, where it is held that assumpsit will lie by the owner of stolen money against the party with whom it is deposited after the latter had notice of the theft. The judgment is affirmed.