Joseph **WEINER**, Individually and on behalf of all members of a class of borrowers similarly situated

v.

**BANK OF KING OF PRUSSIA, et al.**

**Civ. A. No. 72–1444.**

United States District Court,
E. D. Pennsylvania.

April 30, 1973.

Arnold Levin, Freedman, Borowsky & Lorry, Philadelphia, Pa., for plaintiff.

John G. Harkins, Jr., Barbara W. Mather, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for defendants.

## OPINION AND ORDER

NEWCOMER, District Judge.

Presently before the Court is a Motion to Dismiss the Amended Complaint in the above captioned action under Federal Rule of Civil Procedure 12(b) on the ground that the plaintiff lacks standing to maintain his action. The Motion has been submitted by all defendants except Central Penn National Bank.

The plaintiff has brought this action against twenty (20) named banks, including seven (7) national banks and thirteen (13) state banks, and against a class of defendants said to consist of all other national banks within the Court's jurisdiction. The plaintiff alleges that he is a customer and borrower of only one (1) bank, i. e. Central Penn National Bank. However, he claims to sue on behalf of a class of "customers and/or borrowers of national banks in this District."

Nowhere in his Amended Complaint (hereinafter referred to as "Complaint"), does the plaintiff allege how he borrowed from the defendant, Central Penn National Bank; nor does he allege at what rate of interest he borrowed these funds; nor does he allege that his loans come within those statutory categories for which interest rates are fixed by law. All that the plaintiff asserts is that at some point in time he borrowed some money from a Philadelphia bank. Furthermore, the plaintiff has erroneously assumed that two of the statutes upon which he relies, the National Bank Act, 12 U.S.C. § 85 (Count I) and the state laws regulating interest (Count II), are uniformly applicable to all twenty defendant banks. The averments in Counts I and II are wrong on their face since thirteen of the named defendants are state chartered banks, not subject in any way to the duties imposed by the National Bank Act. The National Bank Act, 12 U.S.C. § 21 et seq., regulates national banks and only national banks, which can be identified by the word "national" in their name. 12 U.S.C. § 22. Furthermore, seven of the banks are national banks not subject to state laws regulating interest. Farmers' and Mechanics' National Bank v. Dearing, 91 U.S. 29, 23 L.Ed. 196 (1875); Schuyler National Bank v. Gadsden, 191 U.S. 451, 24 S.Ct. 129, 48 L.Ed. 258 (1903); Haseltine v. Central National Bank of Springfield, 183 U.S. 132, 22 S.Ct. 50, 46 L.Ed. 118 (1901).

Nonetheless, the plaintiff alleges that all the defendants have violated the following federal and state laws regulating the calculation and disclosure of interest rates on loans to individuals:

(a) The National Bank Act, 12 U.S.C. § 21 et seq., which defines the maximum interest rate that can be charged on loans by National banks (Count I);

(b) The laws of the Commonwealth of Pennsylvania which regulate the interest rates that can be charged by state banks (Count II);

(c) Unspecified "common law" (Count III); and

(d) The Truth-in-Lending Act, 15 U.S.C. § 1601 et seq., which requires creditors to disclose information concerning finance charges in consumer credit transactions (Count IV). The plaintiff seeks fines and penalties imposed for violations of these statutes, together with injunctive relief against continuing violations.

The statutes, federal and state, dealing with charges for credit transactions shape the issues in this case and on this motion, and should be considered preliminarily as the setting in which the plaintiff's complaint should be evaluated.

The Federal statute invoked by the plaintiff partially incorporates by reference a state law standard as one of the alternative bases for determining whether the rate of interest to be charged is limited for a particular credit transaction of a national bank, and if so, what the pertinent limit is. 12 U.S.C. § 85. Hence, one of the bases for credit extended by a national bank located in Pennsylvania may be derived by reference to applicable Pennsylvania Standards. Whatever base is used, however, any civil liability for collecting more than a maximum charge, where a maximum is set by law, is determined for a national bank under the federal statute as a matter of federal, not state, law. 12 U.S.C. § 86. In the case of a state bank, any civil liability for collecting more than an applicable maximum is determined under state law. 41 P.S. § 4.

Even where state law becomes a base for determining a national bank's charges it may not be the same law as that which would determine a state bank's charges. One alternative base for a national bank's charges under 12 U.S.C. § 85 is "the rate allowed by the laws of the State" and another alternative is "where by the laws of any state a different rate is limited for banks organized under State laws." Even among national banks, the maximum rate may not be the same in all parts of the same state or at all times, since another alternative base is "a rate of 1 per centum in excess of the discount rate . . . in effect at the Federal Reserve Bank in the Federal Reserve District where the bank is located." The Federal Reserve discount rate varies from time to time and varies in different districts. Parts of Western Pennsylvania are in the Fourth Federal Reserve District, and the rest of the state is in the Third Federal Reserve District.

As to national bank transactions where state law is an alternative base for charges and as to state bank transactions, there is no single rule for determining whether a maximum rate is applicable. Pennsylvania law on charges for credit transactions consists of a number of statutes which either set a limit, or remove a limit, on charges depending on amount, purpose, type of transaction, type of debtor, type of credit extender, and type of collateral. Maximum rates, where set, vary as high as 36% per annum (Small Loan Act, 7 P.S. § 6152). Installment sale rates vary from loan rates. (Motor Vehicle Sales Finance Act, 69 P.S. § 601 et seq.; Goods and Services Installment Sales Act, 69 P.S. § 1101 et seq.; Home Improvement Finance Act, 73 P.S. § 500–101 et seq.). Rates are explicitly removed from some type of borrowers such as corporations (41 P.S. § 2), state and local government units (Acts 205 and 185 of 1972), and from some types of transactions such as F.H.A. and V.A. loans (41 P.S. § 3).

Even in the portion of the credit business consisting of direct loans by state banks to individuals, the rules vary. There is no limit for interest rates on loans of $50,000 or more. (41 P.S. § 3). There is no limit for demand loans of $5,000 or more secured by negotiable collateral (41 P.S. § 1). Outside of such exceptions to any limit, varying maximum rates are set for residential mortgages (other than F.H.A. and V.A. loans, 41 P.S. § 3), other mortgage loans (41 P.S. § 6), installment loans up to $5,000 (7 P.S. § 309), installment loans up to $50,000 for business and other purposes (7 P.S. § 316), and revolving credit loans arising out of retail transactions (69 P.S. §§ 1901, 1904). In the absence of such statutes which remove any limit, or fix limits, the Act of 1858 (41 P.S. §§ 3, 4) sets the "legal rate" at 6% per annum.

The meaning of the "legal rate", where applicable, under the 1858 statute has been judicially determined to be nothing more than an option of the bor-

rower not to pay an excess over 6% or to sue for recovery of the excess within six months after payment of the principal of and interest on the loan. In Appeal of Second Nat. Bank of Titusville, 96 Pa. 460, 463 (1868), the Supreme Court said, after discussing prior Pennsylvania law:

At that time the taking of more than six per cent interest was unlawful, and subjected the lender to a penalty. It is not so now. The Act of the 28th of May, 1858, Pamph.L. 622, has made a radical change in this respect. By the first section of said act six per cent is allowed to be the legal rate of interest, where no express contract has been made for a less rate. The second section recognized the right to reserve or contract for a higher rate, but provides that in such case the creditor shall not compel his debtor to pay more than six per cent; authorizes the debtor to retain and deduct the amount of the excess from such debt, and when he has paid such excess to recover it by an action to be commenced within six months after such payment. It is not therefore unlawful for a debtor to pay and a creditor to receive more than six per cent . . .

This interpretation of the effect of the 1858 statute has been the consistent course of the Pennsylvania decisions as recapitulated in Garbarini v. Amer. Snyder B. & L. Assn., 116 Pa.Super. 41, 43–44, 176 A. 49, 50 (1935):

The act of 1858 contains an express repeal of the previous acts dealing with usury or usurious contracts in Pennsylvania, and did away with the penal provisions contained in a former act. "It is to be remembered in all discussions upon the subject of interest, that what used to be and still is called usury, is not now unlawful in this state—as it was, prior to 1858." Montague v. McDowell, 99 Pa. 265, 269. The creditor may lawfully charge and receive the excess, though he cannot coerce its payment by suit

or process, and the debtor may retain and deduct such excess from the amount of the debt; or where the debtor has voluntarily paid the whole debt or sum loaned, together with interest exceeding the lawful rate, he may recover back any such excess, provided suit is commenced within six months "from and after the time of such payment." Montague v. McDowell, supra; Fitzsimons v. Baum, 44 Pa. 32; Com. v. Hill, 46 Pa.Super. 505, 508; Stayton v. Riddle, 114 Pa. 464, 7 A. 72.

In Rutherford v. Boyer, 84 Pa. 347, 349, Mr. Justice Sharswood said: "The learned judge below was undoubtedly right in holding that when there is a payment of usurious interest for the forbearance of a loan or debt, the right to retain and deduct such excess continues until the whole is paid. It is only when the whole amount and illegal interest has been voluntarily paid, that no suit to recover it back will lie after six months". This statement by the Supreme Court makes it clear that the limitation of six months runs from the time when the loan debt and interest was voluntarily paid and does not refer to the dates of payment of the items of excess interest.

If, on further proceedings, it shall appear that the debt and interest have not been paid, the plaintiff is entitled to offset any sum paid by him in excess of six per cent. If such sums were voluntarily paid within six months of the time when this action was begun, then the plaintiff is entitled to a judgment for such excess.

The variance in the rules between national and state banks, in the rules between different transactions of the same bank, in the rules between different credit extenders which national banks may rely on and in the options available to national banks at different times affect the procedural and substantive issues that could arise in this case. At this threshold point of determining the

plaintiff's standing to assert claims, the scope of the judicial proceeding he seeks to trigger spreads as widely as do all these variances.

In his Complaint, the plaintiff admits that he was a customer and borrower of only one bank, Central Penn, and he does not contend that he had any transactions with any bank other than Central Penn. The defendants argue that whatever the plaintiff's rights are against Central Penn, he does not have standing to sue the other defendant banks, either in his own right or on behalf of the borrowers of other banks. This is so, argue the defendants, because the plaintiff himself has had no credit transactions with and therefore can have no cause of action against the moving defendant banks herein.

■ It is a fundamental principle of law that a plaintiff must demonstrate injury to himself by the parties whom he sues before that plaintiff can successfully state a cause of action. This principle is found in Article III, Section 2, Clause 1 of the Constitution which restricts judicial power to "cases" and "controversies." Flast v. Cohen, 392 U. S. 83, 94–101, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 149–154, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J. concurring); Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239, 57 S.Ct. 461, 81 L.Ed. 617 (1937); Muskrat v. United States, 219 U.S. 346, 356–363, 31 S.Ct. 250, 55 L.Ed. 246 (1911); Osborn v. Bank of United States, 9 Wheat. 738, 819, 6 L.Ed. 204 (1824).

It is the fact, clearly established, of injury to the complainant—not to others—which justifies judicial intervention. McCabe v. Atchison, T. and S. F. R. Co., 235 U.S. 151, 162, 35 S.Ct. 69, 71, 59 L.Ed. 169 (1914).

See Bailey v. Patterson, 369 U.S. 31, 33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962). The Plaintiff's Complaint indicates that he has no credit transactions with the nineteen moving defendant banks; therefore, argue those defendants, whatever their credit practices, they could not possibly have injured the plaintiff.

The defendants argue that the plaintiff is not rescued from his inability to establish injury to himself due to conduct of the moving defendants by the statutes to which the plaintiff makes reference. The various statutes under which he sues (Counts I, II, and IV), to the extent that they confer rights of action on a borrower, confer them only against the institution with which the borrower has dealt. The non-specific "common law" count (Count III) is equally empty as a source of standing since Congress and the state legislature have comprehensively dealt with the question of bank charges of interest on loans and have enacted precise rules of conduct for the national and state institutions subject to their reach.

The plaintiff makes two attempts to paper over the holes in his position on standing. His single, terse reference to a "conspiracy" adds nothing since there is neither a sufficient pleading of a conspiracy nor a "conspiracy" cause of action even were the pleading problem surmounted. See paragraph 11 of plaintiff's complaint. Moreover, the plaintiff's attempt to use a procedural rule— Rule 23—to present claims of borrowers from other banks fails since a procedural rule cannot supply a necessary substantive element, namely, a claim in his own right against the other banks. Without a claim in his own right against the herein moving defendant banks with whom he had no dealings, the plaintiff cannot be "representative" of others who, so he alleges, may have such claims.

*The Statutory Causes of Action Created by The National Bank Act, The State Usury Act, and The Truth-in-Lending Act Run Only to a Borrower Against his own Lender*

■ Loan transactions are contracts between the borrower and the lender. The right to recover statutory penalties for or to raise the defense of

interest in excess of a statutory limit where one is applicable is a personal right to the borrower and can be asserted only by him or those in legal privity with him. PAC Construction Co. v. New York Factors, Inc., 191 F.Supp. 643 (W.D.Pa.1961); Broad & Wall Corp. v. O'Connor, 13 A.D.2d 462, 211 N.Y.S.2d 891 (1961); Stout v. Stern, 89 Pa.Super. 479 (1926); 45 Am.Jur.2d, Interest and Usury, Section 288 (1969).

■ An examination of the statutes upon which Counts I and II of the Complaint rely establishes that they provide no possible cause of action for plaintiff against any bank from which he made no loans. The specific right of action defined by the National Bank Act is as follows:

[t]he taking, receiving, reserving, or charging a rate of interest greater than is allowed by the preceding section [Section 85], when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case the greater rate of interest has been paid, the *person by whom it has been paid,* or his legal representatives, may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid *from the association taking or receiving the same:* Provided, such action is commenced within two years from the time the usurious transactions occurred. 12 U.S.C. Section 86 (emphasis added).

■ This section explicitly limits standing to sue to recover the penalty to a person who has paid improper interest to his creditor. Cronkleton v. Hall, 66 F.2d 384 (8th Cir. 1933); Stephens v. Monongahela National Bank, 88 Pa. 157 (1878). It is to be noted that nowhere in plaintiff's complaint does he allege payment of interest even to Central Penn. The bank receiving the excessive interest from the debtor is the only party liable. Haseltine v. Central National Bank of Springfield, 183 U.S. 132, 137, 22 S.Ct. 50, 46 L.Ed. 118 (1901); Daniel v. First National Bank of Birmingham, 228 F.2d 803 (5th Cir., 1956).

The Pennsylvania statute provides:

When a rate of interest for the loan or use of money, exceeding that established by law, shall have been reserved or contracted for, *the borrower or debtor shall not be required to pay to the creditor the excess over the legal rate,* and it shall be lawful for such borrower or debtor, at his option, to retain and deduct such excess from the amount of any such debt; and in all cases where any borrower or debtor shall heretofore or hereafter have voluntarily paid the whole debt of sum loaned together with interest exceeding the lawful rate, no action to recover back any such excess shall be sustained in any court of this Commonwealth, unless the same shall have been commenced within six months from and after the time of such payment . . . 41 P.S. § 4 (emphasis added).

Pennsylvania law thus limits remedies for excessive interest charges to the borrower who has contracted to pay or has paid the unlawful rate, the Pennsylvania courts have held that a borrower may enforce this provision against only the creditor from whom he contracted. Stout v. Stern, 89 Pa.Super. 479, 483 (1926).

As discussed above, there are a number of Pennsylvania statutes which relate to bank interest charges. Whether there are any limits on the amount of interest which can be charged under these statutes and, if so, what the limit is, vary depending on any number of different factors including the amount and purpose of the loan, the nature of the transaction, the type of debt, the lender and the kind of transaction.

These statutes create a system under which it is not improper or illegal for the parties to agree to any amount of interest whatsoever and to live up to that agreement. The various statutes create a *personal* right of the borrower

not to pay the interest in excess of a statutory limit if there is a limit applicable to his particular transaction. This right is personal to the borrower and to him alone. "In the present state of the law, the defense [interest in excess of statutory limit] is personal, and if the debtor does not choose to make it, one who is a stranger to the contract cannot," Industrial Saving and Loan Assn. v. Hare, 216 Pa. 389, 395, 65 A. 1080, 1082. The right does not, for example, pass to an assignee for the benefit of creditors. "The action in that case [under the Act of 1858] is personal to the debtor paying, and cannot be enforced by creditors, or for their benefit, unless the usury was contracted for and paid with the express intent to hinder or defraud the creditors." Osborn v. First National Bank, 175 Pa. 494, 498, 34 A. 858, 859. "That [interest in excess of the legal rate] is a matter of which the debtor alone can complain. In the case at hand there exists nothing to show collusion to defraud creditors. It follows that they had no standing before the auditor to set aside the appellant's judgment." Appeal of Second National Bank of Titusville, 96 Pa. 460, 464.

The plaintiff admits that he has dealt only with the defendant Central Penn. Under the express terms of the statutes regulating interest which he cites (and only one—the National Bank Act—is really applicable), the plaintiff could have standing to sue no bank other than his own. Having no dealings involving the payment of interest on loans with any of the other nineteen defendant banks, it is obvious that the plaintiff could not have a cause of action against them for any alleged violations of the National Bank Act or Pennsylvania law.

The Truth-in-Lending Act imposes civil liability for violation of its disclosure provisions as follows:

(a) Except as otherwise provided in this section, any creditor who fails in connection with any consumer credit transaction to disclose to any person any information required under this part to be disclosed to that person *is liable to that person* in an amount equal to the sum of . . . . 15 U.S.C. Section 1640(a) (emphasis added).

As in the case of statutes described above, the Truth-in-Lending Act makes explicit that only a person to whom the duty of disclosure is owed can recover for breach of that duty. It is obvious that in order for a bank to be obligated to disclose credit terms to an individual, that individual must be doing business with that bank. 15 U.S.C. § 1631.

The plaintiff admits that he never entered into any credit transaction with the moving defendants herein, and therefore none of those defendants could be liable to the plaintiff under the terms of the statutes discussed above. Plaintiff has failed to state a claim against these defendants, and Counts I, II, and IV of his complaint will therefore be dismissed as to them.

*Plaintiff has No Standing to Assert a Non-Existent Common Law "Claim" for Usury*

At common law, it was illegal to take any interest whatever. Parliament, by legislation, removed the common law prohibition and made it lawful to take a limited amount of interest. Adinolfi v. Hazlett, 242 Pa. 25, 29, 88 A. 869 (1913). An American edition of 4 Blackstone, Commentaries on the Laws of England, reprinted in Philadelphia for use in the colonies in 1772, confirms that by that date the subject of usury had been comprehensively dealt with in England by statute, the first such statute having been adopted in the reign of Henry VIII, 37 Hen. VIII, C. 9. Subsequent statutes both reduced the chargeable rate and provided for remedies, the then most recent remedy being a forfeiture of treble the money borrowed. *Blackstone, supra,* pp. 156–157. The right to charge interest is a privilege granted by statute and subject to legislative control. Equitable Credit & Discount Co. v. Geier, 342 Pa. 445, 456, 21

A.2d 53 (1941). See also, Griffith v. Conn., 218 U.S. 563, 569 (1910); Commonwealth v. Puder, 261 Pa. 129, 137, 104 A. 505 (1918); Equitable Loan Society, Inc. v. Bell, 339 Pa. 449, 456, 14 A.2d 316 (1940).

█ It therefore follows that the plaintiff can assert no claim under the common law for two reasons. First, the charging of a high rate of interest was not illegal under the common law. The common law condemned the taking of any interest at any rate. Second, when the Congress and the Pennsylvania legislature granted the privilege of charging interest on loans of money, defined the maximum permissible rates and provided explicit and limited remedies for violations, these legislative enactments supplemented the common law prohibition. See Equitable Credit & Discount Co. v. Geier, *supra*. Under the legislature's formulation, as noted in the preceding section, the plaintiff has no standing to sue the moving defendants, Therefore, Count III will be dismissed as to those defendants.

### The Allegation of Conspiracy Does Not Alter the Plaintiff's Lack of Standing to Sue

█ The inclusion of a conclusory averment of conspiracy among defendant banks to violate the usury and Truth-in-Lending laws does not remedy the plaintiff's lack of standing to sue the moving defendants. Although all well-pleaded material averments of the complaint are admitted on a motion to dismiss, unsupported conclusions of fact and conclusions of law are not admitted. Oppenheim v. Sterling, 368 F.2d 516, 519 (10th Cir., 1966), cert. denied, 386 U.S. 1011, 87 S.Ct. 1357, 18 L.Ed.2d 441 (1967); Black & Yates v. Mahogany Association, 129 F.2d 227, 231 (3rd Cir., 1941), reh. en banc, 129 F.2d 232, cert. denied, 317 U.S. 672, 63 S.Ct. 76, 87 L.Ed. 539 (1942); 2A Moore's Federal Practice, ¶ 12:08 (2d ed. 1968). The plaintiff cannot avoid the requirement that his pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Federal Rule of Civil Procedure 8(a)(2), by using a conclusory averment of conspiracy. Picking v. State Finance Corp., 332 F.Supp. 1399, 1402–1403 (D. Md.1971), aff'd, 450 F.2d 881 (4th Cir. 1971). The usury and Truth-in-Lending laws establish duties owed by creditors to their customers. There is no provision in any of these statutes similar, for example, to Section 1 of the Sherman Act, 15 U.S.C. § 1, which makes "conspiracy" or "combination" an actionable wrong. Where a statute allegedly violated by defendants does not provide a cause of action for conspiracy, an averment of conspiracy adds nothing to plaintiff's standing to sue:

> . . . [W]here conduct is tortious in itself allegations that it was committed pursuant to a conspiracy add nothing to the complaint. . . . Original Ballet Russe v. Ballet Theatre, 133 F.2d 187, 189 (2d Cir. 1943).

In Zachman v. Erwin, 186 F.Supp. 681 (S.D.Texas 1959), the plaintiff alleged that the Chief Examiner of the Board of Insurance Commissioners had conspired with other defendants to improperly approve the charter of an insurance company. This action and others were alleged to have constituted violations of Sections 12 and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77*l* and 77*o*. Section 12 provides that

> any person who . . . offers or sells a security . . . by means of a prospectus or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading . . . shall be liable to the person purchasing such security from him. . . .

Section 15 extends the liability imposed by Section 12 to every person who, by or through stock ownership, agency, or otherwise controls any person liable under Section 12.

■ The court granted the motion of the Chief Examiner to dismiss the complaint against him for failure to state a claim on the grounds that he was not liable to plaintiff under the terms of Section 12 or 15 since he had not sold plaintiff any securities or controlled a seller. Furthermore, the Court held that he could not be held liable under the Act by the addition of an allegation of conspiracy.

. . . The Securities Act only imposes liability for selling a security under Section 77(*l*) and for controlling a seller under Section 77(*o*) . . . . The Securities Act has no provision for liability of parties on the ground of conspiracy. Any allegation of liability of [the Chief Examiner] on the basis of conspiracy to violate the Securities Act, therefore, is insufficient to state a claim in this action. The motion to dismiss of defendant [Chief Examiner] should be granted as to him. 186 F.Supp. at 686.

A plaintiff's right to recover under the statutes regulating interest charges and the Truth-in-Lending law is similarly limited and depends on the existence of a contractual relationship between the injured debtor and the injuring creditor. Therefore, in order to state a cause of action against the moving defendants, the plaintiff must specifically allege actual participation by the defendants in loan transactions with the plaintiff. Assuming, arguendo, that the defendants agreed to charge excessive interest rates, the fact that such an agreement existed would not enhance a debtor's remedy under the interest or Truth-in-Lending laws. Absent an averment that each conspiring bank actually was a party to the loan contracted with the plaintiff, the plaintiff is limited by these statutes seeking relief for the alleged violation only against the bank with which he entered into an agreement to borrow money.

## The Class Action Allegations do not Affect Plaintiff's Lack of Standing to Sue

■ It is essential to the maintenance of an action under the laws regulating interest and the Truth-in-Lending Act that plaintiff be a party to a transaction with a defendant who violated the laws. The complaint fails to place the plaintiff in the category of a debtor having any dealings with, let alone being injured by, the actions of the nineteen moving defendants. The plaintiff cannot cure this defect by claiming to sue representatively on behalf of those who may have been so injured. Chasin v. Mencher, 255 F.Supp. 545 (S.D.N.Y. 1965). A plaintiff may not use the procedural device of a class action to boot strap himself into standing he lacks under the express terms of the substantive law. It must be noted that the question of standing is totally separate and distinct from the question of plaintiff's right to represent a purported class under Rule 23. While standing to sue is an essential prerequisite to maintaining an action, whether in one's own right or as a representative of a class, the issues are not convertible. Standing to sue is an essential threshold which must be crossed before any determination as to class representation under Rule 23 can be made. Without standing, one cannot represent a class, but standing to sue does not, of itself, support the right to bring a class action. All of the other prerequisite tests of Rule 23(a) and (b)(1) or (2) or (3) must be met.

■ As a matter of elemental law, the Federal Rules of Civil Procedure do not create substantive rights which do not otherwise exist. Substantive federal rights are grounded in the Constitution of the United States and laws enacted by Congress. They are not created by the Federal Rules of Civil Procedure, and, *a fortiori*, they are not created by a mere pleading of the Rules. Indeed, the Rule Enabling Act precludes the use of

Rule 23 to expand the plaintiff's standing under the statutes described above, by purporting that, "Such rules shall not abridge, enlarge or modify any *substantive right*. . . ." (emphasis added). 28 U.S.C. § 2072. The plaintiff's standing to bring an action against each defendant named in the Complaint must be established independently of Federal Rule of Civil Procedure 23. Only then is the plaintiff in a position to represent others having similar claims against those same defendants.

> . . . [P]laintiff and interveners cannot in a class action represent any rights of others which go beyond their own. They can only give to others through representation the benefit of such rights as they are able to establish in their own situation. Propst v. Board of Education Lands and Funds of Nebraska, 103 F.Supp. 457, 462 (D.Neb.1951).

See also, Greenstein v. Paul, 275 F.Supp. 604, 605 (S.D.N.Y.1967), aff'd, 400 F.2d 580 (2d Cir. 1968).

Similarly, in Broomer v. Schultz, 239 F.Supp. 699, 705 (E.D.Pa.1965), aff'd per curiam, 356 F.2d 984 (3rd Cir. 1966), the Eastern District Court held that "plaintiffs . . . cannot bring a suit on behalf of a class based upon a cause of action in which the named plaintiffs have no rights."

In reversing a District Court's refusal to dismiss a complaint in which, inter alia, a shareholder of four mutual funds sought to maintain a class derivative action on behalf of sixty-one funds which were similarly situated but in which the plaintiff owned no stock, the Third Circuit emphasized that a plaintiff cannot remedy his lack of standing to assert a claim by purporting to·represent a class which is entitled to assert a claim.

> Before one may successfully institute a class action "[i]t is of course necessary generally that [he] be able to show injury to himself in order to entitle him to seek judicial relief." Kansas City, Mo. v. Williams, 205 F. 2d 47, 51 (8th Cir.), cert. denied, 346 U.S. 826, 74 S.Ct. 45, 98 L.Ed.2d 351 (1953). A plaintiff who is unable to secure standing for himself is certainly not in a position to "fairly insure the adequate representation" of those alleged to be similarly situated. See Wright, Law of Federal Courts 307–08. *In short, a predicate to appellee's right to represent a class is his eligibility to sue in his own right. What he may not achieve himself, he may not accomplish as a representative of a class.* Kauffman v. Dreyfus Fund, 434 F.2d 727, 734 (3rd Cir. 1970), cert. denied, 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323 (1971) (emphasis added).

See also, Mintz v. Mathers Fund, Inc., 463 F.2d 495, 499 (7th Cir. 1972); Basch v. Talley Industries, Inc., 53 F.R. D. 14 (S.D.N.Y.1971); Herman v. Steadman, 50 F.R.D. 488 (S.D.N.Y. 1970); Syna v. Diners Club, Inc., 49 F. R.D. 119 (S.D.Fla.1970); Hobbs v. Police Jury of Morehouse Parish, 49 F.R. D. 176 (W.D.La.1970); Newman v. AVCO Corp.—Aerospace Structure Division, 313 F.Supp. 1069 (M.D.Tenn.1970).

Although, Plaintiff Kauffman had standing to assert certain claims, the Court of Appeals held that he could not expand his standing to include claims he could not personally bring by seeking to represent those who could assert these claims:

> . . . [T]here is no doubt that appellee may litigate derivative actions in behalf of four funds in which he holds shares.

> ⁎ ⁎ ⁎ ⁎ ⁎ ⁎

> Appellee would have us further hold, however, that he is also entitled to bring a class derivative action on behalf of the 61 mutual funds in which he owns no shares but which are said to be similarly situated.

> ⁎ ⁎ ⁎ ⁎ ⁎ ⁎

> "[T]he parties before the court must be members of the class they seek to represent. See, e. g. Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940); 3A Moore, *Federal*

*Practice,* ¶ 23.04 at p. 3419." Dolgow v. Anderson, 43 F.R.D. 472, 491 (E.D. N.Y.1968).

Accordingly, the attempt to bring a class action in behalf of all funds, by virtue of appellee's entitlement to bring derivative suits in behalf of each of the funds in which he holds shares, must fail.

\* \* \* \* \* \*

There may be injuries to the other corporations, but because appellee does not possess the stockholder relationship to them and the proprietary interest which accompanies this relationship, he may not qualify as their representative in a class action. Kauffman v. Dreyfus Fund, *supra,* 434 F.2d at 734–737

But see, LaMar v. H & B Novelty and Loan Co., 55 F.R.D. 22 (D.Or. 1972), appeal docketed, No. 72–1485 (9th Cir.), in which a court used Federal Rule of Civil Procedure 23 to expand plaintiff's standing to sue under the Truth-in-Lending Act on the ground that a common issue of law existed as to the alleged class and the class action was designed for small claims. The *LaMar* decision is squarely contrary to the principles articulated in *Kauffman* (controlling in the Third Circuit) and the other decisions cited in the *Kauffman* text. A number of other courts have disagreed with the *LaMar* Court's analysis of the advantages of class action treatment in Truth-in-Lending cases. See Katz v. Carte Blanch Corp., 52 F.R.D. 510 (W. D.Pa.1971); Ratner v. Chemical Bank New York Trust Co., 54 F.R.D. 412 (S. D.N.Y.1972); Gerlach v. Allstate Insurance Co., 338 F.Supp. 642 (S.D.Fla. 1972); Rogers v. Coburn Finance Corp., 54 F.R.D. 417 (N.D.Ga.1972); Shields v. First National Bank of Arizona, 56 F.R.D. 442 (D.Ariz.1972).

The Eastern District Court recently applied these principles in In Re Penn Central Securities Litigation, 347 F. Supp. 1327 (E.D.Pa.1972) in which Chief Judge Joseph S. Lord, III, granted partial summary judgment to defendants on the ground that certain named plaintiffs who were not purchasers or sellers of Penn Central securities during the period of defendants' alleged illegal activities had no cause of action under the terms of various sections of the Securities Act of 1933, 15 U.S.C. § 77a et seq., and the Securities Exchange Act of 1934, 15 U.S.C., § 78a et seq. The fact that these plaintiffs sought to represent all shareholders of Penn Central under Federal Rule of Civil Procedure 23 did not alter the Court's conclusion that they lacked standing to assert claims under the statutes which formed the basis of the complaints.

### Discussion

The defendants liken plaintiff's complaint to a witch's brew of theories, defendants and classes, and as fable has it, such brews are rather more spectacular in content than healthful for consumption.

At the very outset this case must be pared to its proper proportions. By a sweeping Complaint, the plaintiff attempts to bring nineteen named and a whole class of unnamed banks, into a lawsuit in spite of the fact that he has never dealt with any of them. He makes serious allegations with respect to them, although he has never borrowed money from any of these banks and was never charged any interest, excessive or otherwise, by them.

When parsed through, the plaintiff's complaint presents a very simple case. He borrowed money from a bank. Although the complaint is silent, he may have paid interest on his borrowings. Again while the complaint is silent, his loan or loans may have come within one of the limited categories for which interest rates have a statutory limit. The plaintiff knows well his rights under the various statutes pleaded and all the remedies which those statutes provide. If he has been damaged with his dealings with his bank, he can seek relief.

The plaintiff has replied to the moving defendants' motion to dismiss for lack of standing by raising questions of

jurisdiction, the requisite for maintaining this suit as a class action, and the proper method of interest calculation. Although all of these items may become relevant at some time in the future, they are not now before this Court. The only issue presently before the Court is that raised by the motion of the moving defendant banks to dismiss the plaintiff's amended complaint on the ground that the plaintiff does not have standing to sue.

■ A substantial proportion of the plaintiff's brief in opposition to the defendants' motion to dismiss for lack of standing is spent on the substantive issue of whether defendants' alleged computation of interest on a 360 day basis violates federal and/or state law. However, it is well established that standing is a jurisdictional issue which concerns the power of the federal courts to hear and decide cases; standing does not concern the ultimate merits of substantive claims involved in the action.

The fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated. . . . In other words, when standing is placed in issue in a case, the question is whether the person whose standing is challenged is the proper party to request an adjudication of a particular issue and not whether the issue itself is justiciable. Flast v. Cohen, 392 U.S. 83, 99–100, 88 S.Ct. 1942, 1952, 20 L.Ed. 2d 947 (1968).

See also Council No. 34 v. Ogilvie, 465 F.2d 221, 225 (7th Cir., 1972).

The moving defendants have thankfully resisted the temptation to try to combat the effort of the plaintiff's brief to color the Court's thinking by a presentation of arguments on the issues of class action determination, jurisdiction, alleged violations of the Truth-In-Lending Act, the National Bank Act, the Pennsylvania statutes which regulate interest and/or the merits of various methods of interest computation. However, the

plaintiff's discussion of Silverstein v. Shadow Lawn Savings and Loan Association, 51 N.J. 30, 237 A.2d 472 (1968), and American Timber and Trading Co. v. First National Bank of Oregon, 334 F.Supp. 888 (D.Or.1971), is illuminating in one respect. In each of these decisions on interest computation, the plaintiff or plaintiffs had loan transactions with the sole defendant and, thereby, standing to sue. Pre-Trial Order No. 1 was intended to avoid a complex and unmanageable potpourri of conflicting legal and factual arguments. Therefore, the Court will confine its attention to the single, narrow, threshold issue which is before it; namely, whether this particular plaintiff has standing to sue the nineteen movng defendants.

*Rule 23 of the Federal Rules of Civil Procedure Does Not Affect Plaintiff's Lack of Standing*

■ The defendants maintain that the plaintiff does not have standing to sue the moving banks, either in his own right or on behalf of the borrowers of the defendant banks because the plaintiff himself has had no credit transactions with and therefore can have no cause of action against the moving banks. The plaintiff does not dispute the fundamental principle that a plaintiff must demonstrate injury to himself by the parties whom he sues before he can successfully state a cause of action. Nor does the plaintiff dispute the fact that the statutes under which he sues, to the extent that they confer rights of action on a borrower, confer them only against the institution with which the borrower has dealt. Rather, the plaintiff argues that Rule 23 alters the basic requirement of standing and permits a plaintiff, who alleges that he represents a class, to sue defendants against whom he himself has no claim.

The plaintiff summarizes his argument as follows:

It is clear that plaintiff has standing to sue Central Penn. It is also clear that defendants are members of the class of banks, along with Central

Penn, that have used the illegal and undisclosed 360 day method of interest computation. Finally, it is clear that plaintiff is a member of a class of borrowers that was injured through the individual and/or collective actions of all the defendants, including Central Penn. (Plaintiff's Brief, p. 3). This argument fails, however, to come to grips with the only question at issue. Whether the plaintiff is or is not a member of a class of allegedly injured borrowers does not, and cannot as a matter of law, create rights which do not otherwise exist.

The fallacy of the plaintiff's argument can be seen by applying his principles to the more familiar factual context of the automobile accident.

A plaintiff injured in a rear end collision could well apply the Weiner logic to assert that it is clear that plaintiff would have standing to sue the negligent driver that hit him, and the negligent driver is a member of a class of negligent drivers involved in rear end collisions. Finally, the plaintiff could assert that he is a member of a class of injured persons injured through the individual and collective actions of the class of negligent drivers. Applying this theory, the injured plaintiff in a rear end collision could sue all drivers that negligently caused a rear end collision. When there is a logical class on one side, i. e. all plaintiffs, and a logical class on the other side, i. e. all defendants, the argument suggests that any plaintiff can assert a cause of action against all defendants.

The cases cited by the plaintiff give no more support to his Rule 23 argument than does his above cited logic. Most of the cases deal with the issue of whether an alleged class action satisfies the specific requirements of Rule 23. Under the terms of Pretrial Order No. 1, the defendants' present motion to dismiss is limited to the issue of the plaintiff's standing; the question of whether plaintiff has satisfied the prerequisite tests of Rule 23(a) and (b)(1) or (2) or (3) is specifically reserved for consideration at a later time.

The plaintiff's reliance on Broughton v. Brewer, 298 F.Supp. 260 (S.D.Ala. 1969), and Washington v. Lee, 263 F. Supp. 327 (M.D.Ala.1966), is misplaced. Both cases were decided by a three judge court convened pursuant to 28 U.S.C. Section 2281. The plaintiffs in both cases sought injunctive and declaratory relief against certain state statutes alleged to be violative of the U. S. Constitution: *Broughton* challenged Alabama's vagrancy statute and *Washington* involved Alabama's statutes requiring racial segregation in state and county prisons. The plaintiffs in both cases had actually been subject to the operation of these statutes. The plaintiffs' standing to sue all state officials involved in the enforcement of the challenged statute was not an issue because the plaintiffs had been directly injured by the operation of the statutes and the state officials were required by these state laws to carry out the allegedly unconstitutional provisions. Furthermore, the plaintiffs sought injunctive relief against the operation of statutes having statewide effect.

The plaintiff herein does not challenge the constitutionality of a state law. Rather he claims certain practices of a bank with which he dealt violate the requirements of state law. He further alleges that other banks with which he never dealt engage in similar practices. However, the plaintiff has not been injured by the alleged illegal practices of the banks with whom he never had credit transactions nor does he allege that these practices are compelled by a state law which he challenges. The laws that the plaintiff claims were violated give causes of action only to borrowers against the institution with which the borrower has dealt.

The plaintiff's citation of Contract Buyers League v. F & F Investment, 48 F.R.D. 7 (N.D.Ill.1969) is equally inappropriate. That complaint alleged that the defendant real estate brokers violated the plaintiff's civil rights by exploit-

ing residential racial segregation and the scarcity of housing for blacks in the sale of properties to plaintiffs at prices far beyond the value of the real estate. In the opinion cited, the court was solely concerned with whether the plaintiffs had satisfied the specific requirements of Rule 23(a) and (b)(3). It is clear from the opinion that the named plaintiffs had purchased properties from the named defendants and therefore there was no standing issue involved. In fact, Judge Will specifically referred to the actual dealings between plaintiffs and defendants in concluding that the named plaintiffs satisfied the requirements of Rule 23.

. . . [B]ecause the challenge to transactions with named defendants at once identifies and limits the class of plaintiffs in this litigation, we find that the allegations of the complaint identify a plaintiff class of negroes who, since January 1, 1952, have entered into installment contracts for the purchase from named defendants of used residential property located in Chicago. 48 F.R.D. at 12 (emphasis added).

Similarly, in Brennan v. Midwestern United Life Insurance Co., 259 F.Supp. 673 (N.D.Ind.1966), and Eastern Fireproofing Co., Inc. v. U. S. Gypsum Co., 160 F.Supp. 580 (D.Mass.1958), also cited by the plaintiff, the plaintiffs therein had all dealt with and allegedly been injured by the named defendants.

The only two cases cited by the plaintiff which reach the issue involved in the present case are La Mar v. H & B Novelty and Loan Co., *supra*, and Kauffman v. Dreyfus Fund, *supra*. In La Mar, the District Court of Oregon held that Rule 23 permitted a plaintiff who had dealt with only one pawnbroker to represent the class of borrowers who dealt with other named defendant pawnbrokers. The La Mar court based this novel interpretation of Rule 23 on its reading of Green v. Wolf Corp., 406 F. 2d 291 (2d Cir. 1968), cert. denied, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969) and Fischer v. Kletz, 41 F.R.D.

377 (S.D.N.Y.1966). Neither case supports the La Mar holding.

In Green, the Second Circuit was concerned with Rule 23 in the context of alleged securities law violations. The issue before the Court was whether a plaintiff who purchased securities in defendant corporation after defendant issued a third prospectus could represent those who purchased stock in defendant corporation before the last prospectus was issued. The Court found that the alleged mis-statements and omissions were common to all three prospectuses and therefore concluded that the plaintiff had satisfied the requirements of Rule 23(a)(2) (whether questions common to the class exist) and 23(b)(3) (whether the common questions predominate over individual issues). Similarly, in Fischer, the court was concerned with whether Rule 23(a)(2) and (b)(3) requirements were satisfied by plaintiffs who purchased securities in Yale Express Systems, Inc. over a period of two years during which time seven statements reflecting the financial condition of Yale were issued. The Court found that the alleged misrepresentation in the financial statements on which the plaintiffs relied in purchasing Yale stock were cumulative and interrelated and therefore concluded Rule 23 was satisfied because common questions of law and fact predominated over individual questions.

In both Green and Fischer, the members of the purported class had all "dealt" with the same defendant in the sense of purchasing its securities. The issue before the court was whether the named plaintiffs could represent those who purchased the defendants' securities at different times, not whether the plaintiff could use Rule 23 to maintain an action against the defendants with whom the plaintiff had never dealt.

The La Mar decision is contrary to the standing principles articulated in Kauffman which is controlling in this Circuit. The plaintiff in Kauffman, a shareholder in four mutual funds, filed a

three count action against 65 mutual funds, 38 investment advisers, 37 directors and a trade association. The plaintiff claimed the defendants had violated (1) the antitrust laws by engaging in a combination and conspiracy to adopt and stabilize fees for management and investment services, to limit competition, to refrain from providing internal fund management, and to otherwise monopolize the management market, 15 U.S.C. Sections 1, 2 (Sherman Act) and 15 U.S.C. Sections 15, 16 (Clayton Act); (2) the Investment Company Act of 1940, 15 U.S.C. Sections 80a–1 et seq., by engaging in "give-ups"; and (3) various securities acts by preparing and issuing misleading proxy and other statements, Securities Exchange Act of 1934, 15 U.S.C. Section 78n and the Investment Advisers Act of 1940, 15 U.S.C. Section 80b–6.

The plaintiff sought to maintain the action in five different capacities: (1) as a shareholder in his own right against the four funds in which he held stock; (2) as a class representative under Rule 23 of all similarly situated shareholders of 65 mutual funds; (3) by virtue of his class representation of all similarly situated shareholders, derivatively on behalf of 65 mutual funds similarly situated; (4) derivatively under Rule 23.1 on behalf of the four funds of which he was a shareholder; and (5) derivatively on behalf of the four mutual funds as a class action on behalf of the 61 other funds similarly situated.

■■■ The Third Circuit held that as a shareholder Kauffman did not have standing to maintain a personal action for injuries to the mutual funds (capacity 1) and therefore he could not serve as a class representative under Rule 23 on behalf of all similarly situated shareholders of the 65 funds (capacity 2). Having rejected Kauffman's shareholder class action based on the theory of a personal right to recover for injuries to the funds, the court similarly rejected the plaintiff's attempt to sue derivative-

ly on behalf of the class (capacity 3). It is well established that Rule 23 does not expand a party's substantive rights or alter basic jurisdictional requirements. See Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969), in which the Supreme Court held that separate claims presented by various claimants could not be aggregated to satisfy the jurisdictional amount required by 28 U.S.C. Section 1332. In *Snyder*, the Court firmly rejected the argument that Rule 23 altered the jurisdictional requirements of 28 U.S.C. Section 1332.

Any change in the Rules that did purport to effect a change in the definition of "matters in controversy" [28 U.S.C. Section 1332] would clearly conflict with the command of Rule 82 that "[t]hese rules shall not be construed to extend or limit the jurisdiction of the United States district courts." Snyder v. Harris, *supra* at 337, 89 S.Ct. at 1057.

See also Zahn v. International Paper Co., 469 F.2d 103 (2d Cir., 1972) in which the Second Circuit held that each member of the class must satisfy the jurisdictional amount.

[A] predicate to appellee's [plaintiff's] right to represent a class is his eligibility to sue in his own right. Kauffman v. Dreyfus Fund, 434 F.2d at 734.

*Kauffman* also established that this principle is equally applicable where a party who may have a cause of action against one defendant, attempts to use Rule 23 to permit him to sue defendants against whom he has no cause of action. The court held that the plaintiff did have standing to maintain a derivative action to enforce the rights of the mutual funds (capacity 4). However, the court rejected the plaintiff's argument that this status enabled him to bring a class derivative action on behalf of other funds in which plaintiff owned no shares but which he alleged were similarly situated (capacity 5). Standing

was denied because Rule 23.1 provides that derivative suits on behalf of a corporation can be brought only by shareholders of the corporation.

Without this relationship, there can be no standing, "no right in himself to prosecute this suit" . . . . Kauffman v. Dreyfus Fund, *supra*, at 736.

Similarly, the statutes under which plaintiff herein alleges a cause of action, to the extent they confer any rights of action, expressly confer them only against the institution with which the borrower had dealt. The plaintiff has no standing to sue any bank other than a bank with which he has dealt. The present case is, if anything, a more compelling situation than that found in *Kauffman*. If the lack of a claim can derive from failure to meet the test of a Rule, even more so is the failure to meet a statutory test ground for the conclusion of the lack of a claim.

In *Kauffman*, the Third Circuit made clear that class action allegations cannot expand a plaintiff's standing beyond the limits of his own cause of action. The plaintiff cites language in *Kauffman* that states if the fund itself sought to bring a class action on behalf of other funds similarly situated, "there would be no theoretical barrier prohibiting such a class action." In that case, that conclusion applies since the defendants were clearly charged with conspiracy to adopt and stabilize management fees in violation of the antitrust laws. However, that conclusion cannot help this plaintiff who has not charged an antitrust conspiracy. The actual issue is whether the plaintiff before this Court has standing. Therefore, whether the funds themselves could maintain a class action in *Kauffman* is equally as irrelevant as whether there may be an individual who has had credit transactions with all twenty defendant banks. This Court may look only to the parties before it.

*Plaintiff's References to Conspiracy and 28 U.S.C. Section 1337 Do not Establish Standing to Sue*

There is no allegation in plaintiff's Amended Complaint of any violation of the antitrust laws. In footnote No. 6 of his brief, the plaintiff makes the unprecedented assertion that reference to 28 U.S.C. § 1337 together with the non-specific allegation of conspiracy constitutes a sufficient pleading of antitrust violations. This argument is totally without merit.

The plaintiff makes but a fleeting and conclusory allusion to "conspiracy" in a section of his Amended Complaint entitled Class Action Allegations (Amended Complaint, ¶ 11) wherein he asserts:

Defendants, in their combination and conspiracy and concert of action, as more fully set forth herein, have acted and refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

The "combination and conspiracy and concert of action" is not, in fact, "more fully set forth herein." The Court is familiar with this type of pleading, and on more than one occasion we have spent a considerable amount of time going back and forth through a pleading in order to find where something is "more fully set forth herein" to no avail. The above cited quotation is the first, last, and only fleeting reference to the purported "conspiracy." Yet the plaintiff attempts to pass off this single conclusory remark as support for his contentions that he has pleaded not only "conspiracy" but a violation of the federal antitrust laws.

Such a contention is unsupportable for two reasons. First, it has long been the rule in the Third Circuit that general conspiracy assertions, without supporting allegations of fact, are insufficient as a matter of law. In Black and Yates v. Mahogany Association, 129 F.

2d 227, 231–232 (3rd Cir. 1941) cert. denied, 317 U.S. 672, 63 S.Ct. 76, 87 L.Ed. 539 (1942), the Circuit Court held in connection with allegations of conspiracy under the antitrust laws:

The views just expressed make it unnecessary for us to elaborate upon plaintiffs' failure to state a cause of action under the Sherman or Clayton Acts. . . . The vital allegations in such an action are similar to those in any civil conspiracy case. A general allegation of conspiracy without a statement of the facts is an allegation of a legal conclusion and insufficient of itself to constitute a cause of action. Although detail is unnecessary, the plaintiffs must plead the facts constituting the conspiracy, its object and accomplishment. The plaintiffs have pleaded none of these facts. Neither the date of the alleged conspiracy nor its attendant circumstances are set forth. Nor is it averred who made the statements, where, when, or to whom.

This principle was recently reiterated by the Second Circuit in Heart Disease Research Foundation v. General Motors Corp., 463 F.2d 98, 100 (2d Cir. 1972), in which the court dismissed plaintiff's complaint without leave to amend.

Although the Federal Rules permit statement of ultimate facts, a bare bones statement of conspiracy or of injury under the antitrust laws without any supporting facts permits dismissal. See generally, 2A Moore, Federal Practice ¶ 12.08 (2d ed. 1968). This is particularly true, when, as here, the original plaintiff has already amended his complaint once with the approval of the court.

See also Jacobs v. Tenney, 316 F.Supp. 151, 163–165 (D.Del.1970) (conspiracy to violate the securities laws); Eisman v. Pan American World Airlines, 336 F. Supp. 543, 553 (E.D.Pa.1971) (conspiracy to violate civil rights under 42 U.S.C. Section 1985); and Drusky v. Judges of the Supreme Court, 324 F.Supp. 332 (W.D.Pa.1971) (conspiracy to violate civil rights under 42 U.S.C. Section 1985).

The plaintiff's amended complaint herein simply contains a general allegation of conspiracy without any statement of facts to support this legal conclusion. This is a fatal defect which requires dismissal of the conspiracy allegation and which underscores the invalidity and specious nature of plaintiff's argument that the amended complaint adequately alleges a violation of the antitrust laws. Furthermore, the statutes allegedly violated by the defendants do not provide a cause of action for conspiracy. Therefore, even if conspiracy was properly pleaded, such an averment would not alter the plaintiff's lack of standing to sue.

Secondly, the plaintiff's contention that his reference to 28 U.S.C.A. Section 1337, "under principles of notice pleading," when taken together with his sweeping allegation of conspiracy, also fails to constitute a sufficient pleading of any antitrust violations. The plaintiff invokes this Court's jurisdiction by virtue of 28 U.S.C.A. 1331 and 1337 (Amended complaint, ¶ 2).[1] The plaintiff concludes, that since Section 1337 is the appropriate jurisdictional provision for an action pleading a violation of Federal Antitrust laws, he has properly pled a conspiracy in violation of the antitrust laws simply by asserting jurisdiction under Section 1337. From this he further concludes that he has standing to sue all the nineteen moving de-

1. Section 1331(a) provides:
"The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."
Section 1337 provides:

"The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade or commerce against restraints and monopolies."

fendants with whom he has not had a borrowing transaction. This argument is circular and fallacious.

 Section 1331 of Title 28 requires an amount in controversy in excess of $10,000. The plaintiff did not plead this amount in either his complaint or amended complaint. The plaintiff cannot hope to aggregate the claims of all the members of the purported class to meet this jurisdictional amount. Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969). Hence, he needed a jurisdictional provision which does not require an amount in controversy. Accordingly, he pled jurisdiction under Section 1337.

The plaintiff argues that he has cited a section of Title 28 which he feels appropriately governs jurisdiction for alleged violations of the National Bank Act and, further, that said section of Title 28 is also appropriate for actions alleging federal antitrust violations. Therefore, he concludes, he has pled a "conspiracy in restraint of trade" and he further concludes that he has standing to sue all of the defendants. We do not agree with the plaintiff's conclusions.

Federal Rule of Civil Procedure 8(a) provides in pertinent part:

> (a) Claims for Relief. A pleading which sets forth a claim for relief, whether an original claim, counter-claim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the ground upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief. . . .

 The purpose of this Rule is to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). Under no construction of the concept of fair notice can the plaintiff maintain that he has adequately advised the defendants of an antitrust claim by pleading jurisdiction under 28 U.S.C. Section 1337. First, Rule 8 indicates that the pleading of jurisdiction is distinct from the pleading of claims for relief. See Federal Rule of Civil Procedure 8(a)(1). Secondly, in addition to the antitrust laws, Section 1337 has been held to grant jurisdiction to the district courts over suits involving numerous other federal laws. Among the actions over which the district court has been held to have original jurisdiction by virtue of Section 1337 are actions arising under: the Civil Aeronautics Act, 49 U.S.C. § 401 et seq. (Lichten v. Eastern Air Lines, 87 F.Supp. 691 (S.D.N.Y. 1949), aff'd, 189 F.2d 939 (2d Cir. 1951); the Federal Communications Act, 47 U.S.C. § 151 et seq. (Weiss v. Los Angeles Broadcasting Co., 163 F.2d 313 (9th Cir. 1947), cert. denied, 333 U.S. 876, 68 S.Ct. 895, 92 L.Ed. 1152 (1948); the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq. (Imm v. Union R. Co., 289 F.2d 858 (3rd Cir. 1961); The Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (Manosky v. Bethlehem Hingham Shipyard, 177 F.2d 529 (1st Cir. 1949); The Interstate Commerce Act, 49 U.S.C. § 1 et seq. (Turner, Dennis & Lowry Lumber Co. v. M. & St. P. Ry. Co., 271 U.S. 259, 46 S.Ct. 530, 70 L.Ed. 934 (1962)); The Jones Act, 46 U.S.C. § 688 (Ballard v. Moore-McCormack Lines, Inc., 285 F.Supp. 290 (S.D.N.Y.1968)); The Labor Relations Act, 29 U.S.C. § 151 et seq. (Templeton v. Dixie Color Printing Co., 444 F.2d 1064 (5th Cir. 1971)); The Railway Labor Act, 45 U.S.C. § 151 et seq. (International Assn. of Machinists v. Central Airlines, Inc., 372 U.S. 682, 83 S.Ct. 956, 10 L.Ed.2d 67 (1963)); and The Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 401 et seq. (Serio v. Liss, 300 F.2d 386 (3rd Cir. 1961)). It is obvious that under the plaintiff's concept of notice pleading, a defendant could never be apprised of the particular act within Section 1337's ambit on which the plaintiff is basing

his action. Even under the liberal pleading requirements of Federal Rule of Civil Procedure 8, the plaintiff has not given the defendants "fair notice" of his claim merely by pleading jurisdiction under 28 U.S.C. § 1337.

The plaintiff has not pleaded a conspiracy within the long-established standards of this Circuit. Nor has he even remotely pled a violation of the antitrust laws. Therefore, the plaintiff's references to conspiracy and to 28 U.S.C. § 1337 do not establish his standing to sue the nineteen moving defendants.

### Plaintiff has no Standing to Assert a Common Law Claim for Unjust Enrichment

Count III of the plaintiff's amended complaint charges the defendants with an unspecified violation of the common law. The defendants took a shot in the dark, which is all that one can do with an unspecified violation, and made the guess that the plaintiff was referring to a violation of common law usury. The defendants then established that the plaintiff had no standing to assert such a claim. Then, in his brief contra defendants' motion to dismiss the amended complaint on the ground of plaintiff's lack of standing, the plaintiff let us in on his secret, and for the first time disclosed that Count III referred to a common law claim for unjust enrichment. For the reasons set forth below, the plaintiff also lacks standing to assert this claim.

The general rule is that "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." Restatement of Restitution, Section 1 (1937), quoted with approval in General Casmir Pulaski Bldg. & Loan Assn. v. Provident Trust Co., 338 Pa. 198, 202, 12 A.2d 336 (1940). See also Meehan v. Cheltenham Township, 410 Pa. 446, 451, 189 A.2d 593 (1963). The National Bank Act, 12 U.S.C. Section 86, and the Pennsylvania usury law, 41 P.S. § 4, both provide that a borrower may recover excessive interest paid to the creditor in an action un-

der these sections. Neither these statutory remedies nor the principle of unjust enrichment provide that the borrower is entitled to double recovery. Therefore, the borrower must choose his remedy and either recover the excessive interest through the statutory remedies or by way of an action in assumpsit for unjust enrichment.

The defendants have already established that the plaintiff has no possible statutory cause of action against the banks with which he did not have any credit transactions. Similarly, the plaintiff cannot make any claim for unjust enrichment against a bank with which he never dealt. The principle of unjust enrichment prevents a person from keeping money he has received which in equity and good conscience belongs to another. In order to sue in assumpsit for unjust enrichment, a plaintiff must establish that a defendant has received money which rightfully belongs to the plaintiff. There must be some privity between the parties with relation to the money sought to be recovered. The defendant must have received money which belongs to the plaintiff. Caskie v. Phila. Rapid Transit Co., 321 Pa. 157, 184 A. 17 (1936); Humbird v. Davis, 210 Pa. 311, 59 A. 1082 (1904).

It is clear that if the plaintiff has any claim for unjust enrichment, it can only be against the bank which actually received money from him. The plaintiff cannot possibly assert a cause of action for unjust enrichment against banks which never received any money from him. Therefore, the plaintiff has no standing to sue the moving defendants under Count III, and this Count will be dismissed as to these defendants.

### Standing Revisited

The plaintiff has directed this Court's attention to the case of Samuel v. University of Pittsburgh, et al, 56 F.R.D. 435 (W.D.Pa., 1972) wherein Judge Teitelbaum refused to permit the plaintiffs who were enrolled at the University of Pittsburgh, a state related school, to bring a suit for refund of excess tuition

against the named defendant and a class of thirteen other Pennsylvania universities and colleges. That Court determined that "the named plaintiffs appear to lack legal standing," because they are "not and have not been affected in any way by the application of the 'similar' 'common law rule'" employed by those colleges and universities. This is precisely the argument asserted by the moving defendants herein, i. e. that the plaintiff has not been affected by the practices of the moving defendants because he did not borrow from them and therefore he has no action against those lending institutions. Since the plaintiffs, themselves, lacked standing in *Samuel,* that Court refused to let them represent the class of students who had been affected by the rule employed by the other colleges and universities on a claim for a tuition refund.

The plaintiff has apparently cited the case for its class action discussion; however, any discussion of a defendant class is premature as a matter of logic because the class is limited, as in *Samuel,* (1) by the plaintiff's own standing; and (2) in point of time because class action motions have been deferred under this Court's Pretrial Order No. 1 until all Rule 12 motions are decided. In any event, the class action discussion of the Court in *Samuel* is yet another example of constitutional challenges to statutes, or, as in the *Samuel* case, to a state rule promulgated by the Attorney General, where a class of defendants may be proper since all defendants act according to the challenged law. This line of cases was discussed earlier in this opinion. We will not rehash old issues.

### Conclusion

The sole issue presently before this Court is whether a plaintiff who alleges a credit transaction with one bank has standing to sue nineteen other banks with which he never dealt. Much of the plaintiff's argument addresses itself to matters which are not relevant to the issue at hand. Rather than confront the issue of standing, the plaintiff has at-

tempted to divert the argument to questions of class actions under Rule 23. However, standing and the specific requirements of Rule 23 are separate and distinct issues, and a plaintiff may not use the procedural device of a class action to bootstrap himself into standing he lacks under the express terms of the substantive law. Furthermore, this Court has specifically reserved consideration of class action determination for another time if such a determination is found to be necessary.

The plaintiff's claim is quite simple. The plaintiff alleges that he borrowed money from a bank and that his loan comes within one of the limited categories for which interest rates have a statutory limit. If the plaintiff has been wronged in his dealings with his bank, he may seek appropriate statutory relief. However, the statutes do not give him the right to expand a potential dispute between himself and his bank into a massive, complex, time consuming, expensive lawsuit.

For the reasons discussed above, the plaintiff has no standing to sue the nineteen moving defendants, and these defendants will be dismissed from this action.